## HEIGERT *v.* THE STATE.

[No. 5,687.   Filed October 26, 1905.   Rehearing denied February 23, 1906.]

1. CRIMINAL LAW.—*Baseball.*—*Sunday.*—*Fee.*—Where the management of a Sunday game of baseball charged fifteen cents for seats in the grandstand and ten cents for "bleachers," there is a violation of law, the claim that the fee was paid for the "seats" and not for the game being a subterfuge or·an attempt to evade the statute.   p. 401.

2. SAME.—*Baseball.*—*Sunday.*—*Fee.*—Where a Sunday baseball game was not free and an admission was charged to some of the spectators, the law is violated, though some may witness such game without the payment of any fee.   p. 401.

From Hancock Circuit Court; *Edward W. Felt,* Judge.

Prosecution by the State of Indiana against James Heigert.   From a judgment of conviction, defendant appeals.   *Affirmed.*

*Binford & Walker,* for appellant.

*Charles W. Miller,* Attorney-General, *W. C. Geake, A. C. Van Duyn* and *C. L. Tyndall,* for the State.

ROBY, J.—Appellant was charged by indictment and found guilty upon trial of having unlawfully engaged in playing a game of baseball, where an admission fee was

charged and paid by the spectators, upon Sunday.   §2087
Burns 1901, Acts 1885, p. 127; *State* v. *Hogreiver* (1899),
152 Ind. 652.

The evidence was to the effect that on September 11,
1904, said day being the first day of the week, commonly
called Sunday, the defendant, James Heigert, engaged in
playing a game of baseball on the ball ground located at
or near a park called Spring Lake Park, in Hancock
county, State of Indiana.   Said ground had been leased
by Mrs. Jennie Colestock to a Mr. Matthews.   Said ground
was bounded on the north by the Spring Lake Park land,
which was owned by Mr. Matthews.   Said ground was
bounded on the east, west and south by the lands of said
Jennie Colestock.   Said ground where said game was played
had been scraped or leveled, and a baseball diamond made
thereon, and at the northwest corner of the ground so pre-
pared an amphitheater stood fronting eastward on the ball
ground.   Said amphitheater was provided with seats, and
there was a roof over said seats to protect the occupants
thereof from the sun and rain.   Said amphitheater was
entered from the north end thereof by means of steps.   A
short distance east of said amphitheater, and on the north
side of said ground, seats had been constructed of boards
without any covering over them, said seats being character-
ized as "bleachers."   Said seats fronted southward on the
ball ground.   A tight board fence extended east from the
north end of said amphitheater, along the north side of said
ground, to a point within forty feet of the east line of said
ground.   Said fence thence veered in a southeastwardly
direction a very short distance, stopping before it reached
the east line of said ground.   Said fence was of such height
that people on the north side thereof could not see the
players in the game of ball on the south side thereof.   There
was a gate in said fence a little east of the amphitheater,
and near said board seats or "bleachers."   At the east end

of said fence people, by passing over other lands, could pass around and onto the ball ground, and view the ball ground and the game of ball while it was being played, there being no fence on the east side of said ground. There was no fence on the south side of said ground, and the view from the west end of said ground was unobstructed, except the part along which the amphitheater fronted. A building used as a ticket office stood a little to the north of the amphitheater, and while said game of ball was being played tickets were sold at fifteen cents each, entitling the purchasers to occupy seats in the amphitheater, and tickets were also sold at ten cents each, entitling the purchasers to occupy seats on the "bleachers" east of the amphitheater. About four hundred seventy-nine tickets were sold for the amphitheater seats and about one hundred twenty tickets for the "bleacher" seats. The tickets sold for seats in the amphitheater were taken up at the entrance thereof as the purchasers passed in, and the tickets for the "bleachers" were taken up as the purchasers passed through the gate leading to said seats. Said seats so sold were occupied by the purchasers while the game of ball was being played. During the entire time said game was being played the view on the east and south sides of said ground was unobstructed, and the view was unobstructed on the west side of said ground, except the points along which the amphitheater extended, and persons desiring to see said game could do so at said points without paying any fee therefor. No attempt was made by the defendant or any person connected with the game to prohibit persons from seeing said game at said points, and no tickets were sold nor fee charged except the tickets sold for the seats in the amphitheater and for the seats on the "bleachers." A great many people did witness said game of baseball from the east and south sides of said ground, and from points on the west side of said ground, said persons did not pay

any fee for seeing said game, and no attempt was made by the defendant or any one connected with said game of ball to prevent them from seeing said game of ball.

Appellant's propositions for reversal, raised by exceptions to instructions given and to the refusal to give instructions requested by him, are that the question of an admission fee's being charged should not have been submitted to the jury. It is claimed that evidence showing the sale of seats is not supportive of the charge made, and that the offense does not exist if the game can be seen by spectators without being compelled to pay for so doing.

The eleventh instruction given was as follows: "In determining whether the fee paid, if any, was such as makes the defendant liable, you must determine from the evidence whether the fee so paid was paid that the spectator might see the game of baseball, or simply for the purpose of having a seat, without any relation whatever to the game of baseball which was played, if any was so played. If the playing of the game of baseball was the inducement which led to the payment of a fee by spectators, if any did so pay, then any one engaged in playing a game of baseball on Sunday, as alleged in the indictment, is guilty under the statute." The law concerns itself with substance rather than form. It does not tolerate subterfuge or evasions, and the evidence justified the court in submitting the question of fact to the jury, as was done.

The thirteenth instruction was as follows: "The fact that some may have seen the game in question without paying any fee, or that all could have seen the game without any fee whatever, will not relieve the defendant from liability in this case if you believe from the evidence, beyond a reasonable doubt, that the defendant played in the game, as alleged, on Sunday, and that some of the spectators paid a fee which was charged by the managers of the game in connection with the game of

baseball so played." It was sufficient to show that the exhibition was not free, and evidence of the payment of a fee by one or more persons is competent proof of that fact; nor is it necessarily given a different character by the fact that some persons saw the game without paying therefor. *State* v. *Hogreiver, supra.*

Judgment affirmed.