## The State v. Hogreiver.

[No. 18,783. Filed May 23, 1899. Rehearing denied June 28, 1899.]

CRIMINAL LAW.—*Affidavit.—Baseball.—Sunday.*—An affidavit in a prosecution for playing baseball on Sunday where an admittance fee is charged, in violation of section 2087 Burns 1894, is not bad for failing to state the name of some person who paid an admission fee. *pp. 653 656.*

SAME.—*Baseball.—Sunday.*—Section 2087 Burns 1894, prohibiting any person from playing baseball on Sunday "where any fee is charged" is not void for uncertainty as to the meaning of the word "fee", or by whom it is to be paid. *pp. 656, 657.*

STATUTORY CONSTRUCTION.—*Constitutional Law.*—The rule that a penal statute will be strictly construed does not apply in determining the constitutionality thereof. *p. 657.*

CONSTITUTIONAL LAW.— *Baseball. — Sunday.* — Section 2087 Burns 1894 prohibiting any person from playing baseball on Sunday, where a fee is charged, is not class legislation within the mean-

State v. Hogreiver.

ing, and in violation of the fourteenth amendment of the
United States Constitution providing that "no state shall make
or enforce any law which shall abridge the privileges or immu-
nities of citizens, nor deny to any person, within its jurisdiction the
equal protection of the laws", nor of article 1, section 23 of the
State Constitution providing that "the General Assembly shall not
grant to any citizen, or class of citizens, privileges or immunities.
which, upon the same terms, shall not equally belong to all
citizens." *pp. 657-659.*

CRIMINAL LAW.—*Police Power.—Baseball.—Sunday.*— Section 2087
Burns 1894 prohibiting persons from playing baseball on Sunday
where a fee is charged is a valid exercise of the police power of
the State. *pp. 659, 660.*

SAME.—*Penalties.—Constitutional Law.*—Where several different
acts are prohibited by law, a difference in the penalties for viola-
tions of such several acts cannot be said to constitute a breach of
the constitutional provisions intended to secure equal rights to all
citizens. *pp. 661, 662.*

SAME.—*Penalties.—Review.*—The graduation of penalties for offenses,
differing in their circumstances and surroundings is a matter
wholly within the discretion of the legislature, and will not be re-
viewed by the courts where an abuse of discretion is not shown.
*pp. 661, 662.*

From the Marion Criminal Court. *Reversed.*

*W. L. Taylor,* Attorney-General, *Merrill Moores, C. C.
Hadley* and *C. S. Wiltsie,* for State.

*F. B. Burke* and *Henry Warrum,* for appellee.

DOWLING, J.—The appellee with three other persons was
charged upon affidavit in the police court of the city of In-
dianapolis with a violation of the statute prohibiting the
playing of baseball on Sunday, where any fee is charged.
He was found guilty, and fined. He appealed to the Marion
Criminal Court, and, on motion, the affidavit was quashed,
and he was discharged.

The State appealed, and the error assigned is the ruling of
the court on the motion to quash.

The affidavit thus brought under review is in these words:
"State of Indiana, Marion County, City of Indianapolis,
—ss: Be it remembered that on this day before the
judge of the police court of the city of Indianapolis, per-

sonally came Chris Kruger, who, being duly sworn upon his oath, says: That Albert H. Pardee, George Hogreiver, Ed. H. Deady, Jess Hoffmeister, late of said city and county, on the 22nd day of May, in the year 1898, at and in the city of Indianapolis, county aforesaid, did then and there unlawfully engage in playing a game of baseball, where an admittance fee of twenty-five cents each was charged, and paid by the spectators then and there being, the said day being the first day of the week, commonly called Sunday, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana.

[Signed]                    CHRIS KRUGER.

"Subscribed and sworn to before me this 23rd day of May, 1898.    Charles E. Fox, Judge."

The affidavit is assailed upon the grounds (1) that it does not state facts sufficient to constitute a public offense; (2) that the act of the legislature upon which it is based is unconstitutional; and (3) that the said act is ambiguous and uncertain, and therefore void.

The statute so assailed is in these words:    "It shall be unlawful for any person or persons to engage in playing any game of baseball where any fee is charged, or where any reward, or prize, or profit, or article of value is depending upon the result of such game, on the first day of the week, commonly called Sunday, and every person so offending shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not exceeding twenty-five dollars." Acts 1885, p. 127, section 2087 Burns 1894.

Among the objections taken to the sufficiency of the affidavit, it is urged that if the word "fee," in the statute means a charge for admission, then the name of some person paying it should be stated, and in support of this objection we are referred to Vol. 10, Enc. Pl. and Pr. pp. 505, 506; Harris' Crim. Law, pp. 265, 266; *State* v. *Stucky,* 2 Blackf. 289; *State* v. *Jackson,* 4 Blackf. 49; *State* v. *Noland,* 29 Ind.

State *v.* Hogreiver.

212; *Zook* v. *State*, 47 Ind. 463; *Alexander* v. *State*, 48 Ind. 394; and *McLaughlin* v. *State*, 45 Ind. 338.

But the rule as laid down in these authorities goes only to the extent that when the names of third parties enter into the offense, and are necessary for the description of the crime charged, and for its identification, they must be set out. In the case of the *State* v. *Stucky, supra,* the indictment charged a sale of liquor "to divers persons," without license. Held, that the names of the persons should be stated, if known. In *State* v. *Jackson, supra,* the charge of selling liquor to an Indian of the Miami tribe, whose name was unknown, was held good. *State* v. *Noland, supra,* was an indictment for suffering a house to be used for gaming. Held, that the names of the persons who were suffered to gamble should be set out, if known. *Zook* v. *State, supra,* and *Alexander* v. *State, supra,* were prosecutions against owners of billiard tables for permitting minors to play billiards. Held, that the names of the minors, and of the persons with whom they played, should be stated, or the reason given for not doing so. *McLaughlin* v. *State, supra,* was an indictment for selling liquor to persons intoxicated, etc. Held, that the names of the persons to whom sales were made should be set out, if known.

It will be observed that none of these offenses bears the least resemblance to the misdemeanor before the court, in its character, circumstances, or legal description, and the rule which governs those cases does not apply to the offense set forth in this record.

The object and meaning of the statute under examination are plain. The intention of the people of the State was by this law to prohibit the playing of baseball on Sunday *where* a fee was charged. *"Where"* signifies, "a place at which," or, "under circumstances in which." Standard Dictionary; Webster's International Dictionary.

The law applies to exhibitions in which the actors or players engage in the game of baseball.

It discriminates between *free* exhibitions of this kind, and those where a fee must be paid by the persons witnessing the performance.

It knows but two parties to such an exhibition,—the *players* and the *spectators.* It does not in the least concern itself with managers, owners of baseball teams, lessors or lessees of the grounds where the game is played, or the proprietors of adjoining lands or buildings. It is immaterial to whom the fee is paid, whether directly to the players, to their agent or manager, or to some person or company hiring, or otherwise securing the services of the players.

The natural meaning and obvious signification of the word *"fee,"* in its connection in this statute is, the sum charged each person admitted to witness the game of baseball by the persons giving the exhibition.

It is not necessary to set out the name of any person paying such fee for admittance. It is enough to aver that a fee for admittance was charged. This indicates that the exhibition was not free, but was given for the purpose of gain, and in that respect it sufficiently describes the offense. *Hull* v. *State*, 120 Ind. 153.

On the trial, it would not be necessary to prove that any particular person paid a fee for admittance. It would be sufficient to show that the exhibition was not free, but that persons desiring to witness it were required to pay a fee, or buy a ticket to secure that privilege. Evidence that one or more persons did pay fees for admittance would, of course, be competent proof that it was not a free entertainment, but one where a fee was exacted from the spectators.

This construction of the statute does not extend its scope beyond the fair and natural import of its terms.

We are next asked to hold the statute void for uncertainty and ambiguity, and the supposed defect consists in the use of the words, "where any fee is charged." It is said that this part of the act is indefinite and uncertain, and that it cannot be understood what is meant by "fee," or by whom it is to

State *v.* Hogreiver.

be paid.  What we have said in regard to the affidavit, is a sufficient answer to this objection.  There are but two kinds of exhibitions, one free, where the spectator is admitted without charge; the other restricted, where the spectator is charged a fee for admittance.  Two classes of persons, only, are recognized by the statute as concerned in such exhibition, the players, and the persons assembled to witness the game.  Keeping these facts in view, there is not the slightest difficulty in determining what is meant by the term *fee,* or by whom, and to whom it is to be paid.

The constitutionality of the statute is attacked and in connection with this assault it is contended that, the act being penal, it is to be strictly construed.

We recognize the importance of the rule as to the construction of penal statutes in all cases to which it properly applies, but we do not believe it should be so unreasonably enforced as to defeat the sovereign will when that will is expressed, as it is here, with ordinary certainty, and is easily intelligible.  A law established by the legislature is entitled to the respect of every branch of the state government.  It should never be lightly overthrown, or set aside, as unconstitutional.  A statute enacted with the constitutional formalities comes before this court, sustained and authenticated by the sanction and approval of two of the three great departments of the state government.  The power to set aside and declare void an enactment so sanctioned and approved, is the highest exertion of the constitutional authority of this court, a prerogative always exercised with reluctance, and never asserted where the question of the constitutionality of a statute is in doubt.

Counsel for appellee insist that the act prohibiting the playing of baseball on Sunday, where a fee is charged, and subjecting the players to a fine, is in conflict with those clauses of the federal and state Constitutions which forbid class legislation.

VOL. 152—42

The fourteenth amendment of the Constitution of the United States provides that, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens, nor deny to any person, within its jurisdiction, the equal protection of the laws."

The Constitution of the State of Indiana contains this clause (article 1, section 23): "The General Assembly, shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

Does a statute which prohibits the playing of games of baseball on Sunday, where a fee is charged, abridge the privileges or immunities of citizens of the United States or deny to any person within the jurisdiction of the State, the equal protection of its laws? Does it grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, do not equally belong to all citizens?

The argument of counsel for appellee is that baseball playing is an occupation by which persons skilled in the game earn a livelihood; that the persons engaged in this particular calling cannot be singled out, and prohibited from exercising it on Sunday, under different and more severe penalties than those imposed on citizens engaged in other kinds of business; and that, as the statute before us makes this discrimination, it violates the organic law.

Whether or not the game or sport is entitled to recognition as a form of labor, and therefore stands on the same footing as blacksmithing, farming, or selling merchandise, is not material. The State deals with it in the exercise of its police power, to circumscribe certain evils which are likely to result from its unrestrained practice, to repress certain known pernicious tendencies, and to protect the citizens of the State in the enjoyment of that repose and quiet on the day set apart by secular laws for rest and recuperation to which they are entitled.

The objects of the game of baseball, as stated in the brief

of counsel for appellee, are to furnish entertainment and amusement to the spectators of the sport. It is said to be popular. It attracts great throngs, including persons of all ages and of both sexes. Both chance and skill enter into the doubtful results of the game. It affords the opportunity, and furnishes strong inducements to that species of gambling known as "betting." The contests between the players are often close and exciting, and the decisions of umpires unsatisfactory. Tumults, riots, and breaches of the peace at the games, are not uncommon.

Wherever these conditions exist, the peace and quiet of neighborhoods are liable to be disturbed, and the public order broken. Under such circumstances, it follows that extraordinary police regulation and supervision become necessary, and, this being the case, these exhibitions fall, unquestionably, within the class of entertainments and occupations which, in the legitimate exercise of the police power of the State, may be regulated, restrained, or even prohibited by the people, through the legislature, without a violation of any provision of the Constitution, state or federal.

Familiar instances of the exercise of this power are found in the laws and in municipal ordinances relating to the selling of liquor, the maintenance of dance houses, and concert saloons, theaters, circus performances, horse racing, the keeping of places for sports and games, billiard rooms, the ringing of bells, regulating the speed of horses on streets and highways, regulating sales in markets, relating to persons having infectious diseases, regulating the business of mining and many others.

The statute of this State known as the "General Sunday Act" has a wider scope than is sometimes ascribed to it. It prohibits not only acts of common labor, but it forbids rioting, hunting, fishing, and quarreling on the first day of the week, commonly called Sunday. It applies to amusements and recreations, as well as to labor, and conduct tending to a breach of the peace. Section 2086 Burns 1894. Its consti-

tutionality has repeatedly been assailed by litigants, and as often affirmed by the decisions of this court.

In *Voglesong* v. *State*, 9 Ind. 112, (1857), it is said: "The constitutionality of the Sunday act we shall not discuss; though the counsel, in this case, have presented a very learned and able printed argument against its validity. The question can hardly be considered as an open one. The grounds upon which such acts are sustained have been thoroughly examined and are generally admitted to be substantial. This court has acted upon them as such."

Again in *Foltz* v. *State*, 33 Ind. 215, (1870), the court say: "It is urged that the law, under which the prosecution was had, is obnoxious to the Constitution of the State.

"We decline the discussion of this question, for the reason that the act in question has been so long recognized and acted upon, and so often affirmed by this court, that it cannot longer be regarded as an open question in this State."

The question of the validity of the Sunday act was again before the court in *Johns* v. *State*, 78 Ind. 332, 41 Am. R. 577, (1881), and was disposed of in these words: "The second question is this: Is the 95th section of the act of April 14, 1881, in conflict with any constitutional provision? A long line of decisions affirm the validity of this law. It has been sustained against repeated assaults. It has been a part of the statutory law of the State since its organization. Cases old and new have sustained and enforced it. *Rogers* v. *Western Union Tel. Co.*, 78 Ind. 169, and authorities cited; *Mueller* v. *State*, 76 Ind. 310. Like statutes have been upheld in almost all of the states of the Union."

The cases in which the constitutionality of similar statutes have been sustained are practically innumerable. A few of the more important are the following: *Holy Trinity Church* v. *United States*, 143 U. S. 457, 12 Sup. Ct. 511; *Health Department* v. *Trinity Church*, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710; *State* v. *Powell*, (Ohio) 50 N. E. 900;

*State* v. *Judge*, 39 La. Ann. 132, 1 South. 417; *People* v.
*Bellet*, 99 Mich. 151, 57 N. W. 1094, 22 L. R. A. 296.

These decisions, and many others which might be named,
indicate the general sentiment and the fixed public policy in
the states of the Union on the subject of Sunday legislation.
That sentiment is too widely spread and profound, and that
policy too firmly embedded in the laws, and in the decisions
of the courts to be changed or overthrown.

But it is said, that under the general statute making hunt-
ing, fishing, rioting, quarreling, and engaging in acts of com-
mon labor unlawful, the person offending is subject only to a
fine of not more than $10, while the baseball player, under
the act of 1885, for practically the same offense, may be sub-
jected to a penalty of $25.    Hence, it is claimed, the effect
of this act, if upheld, is to grant to other citizens privileges
and immunities, which, upon the same terms, shall not equal-
ly belong to all citizens.

The constitutional authority of the legislature to enact any
statute making it unlawful to do certain acts on the first day
of the week, commonly called Sunday, being admitted, viola-
tions of such laws are not privileges and immunities which
must be secured to all citizens alike, and upon the same terms.
Where several different acts are prohibited by law, a differ-
ence in the penalties for violations of such several acts
cannot be said to constitute a breach of the constitutional
provisions intended to secure equal rights to all citizens.    It
is but reasonable that in every case of the violation of
law the penalty should be graduated by the character and
circumstances of the offense, and in proportion to its injurious
consequences to the public.

This principle has been recognized and adopted in this
State from the earliest period of its government.    Special
penalties for selling liquor on Sunday have been enforced.
Thirteen separate species of embezzlement are mentioned in
the criminal code, and seven distinct kinds of punishment are
provided for the crime, ranging from imprisonment for six

months to confinement for twenty-one years. Many other instances may be found in the statutes. The state officer, who is found guilty of the crime of embezzlement, may be imprisoned twenty-one years, and fined double the value of the money embezzled. A tenant who embezzles the crops of his landlord can be imprisoned only three years. Could the state officer overthrow the statute which denounces his crime as class legislation, because the penalty for another species of embezzlement is imprisonment for three years only? Natural justice requires that the penalty shall bear some proportion to the nature and circumstances of the offense. The legislature is clothed with the power of defining crimes and misdemeanors and fixing their punishment; and its discretion in this respect, exercised within constitutional limits, is not subject to review by the courts. If the legislature deemed it expedient for the public welfare that a baseball player, who gave a public exhibition of his skill on Sunday, where a fee was charged, in the presence of numerous spectators, should be fined $25 for the offense, but that a citizen who shot a partridge, caught a fish, shod a horse, or sold a yard of cloth would be sufficiently punished by a fine of $10, shall the courts go to the absurd length of saying that this was class legislation, and that the Constitution had been violated?

The act in question applies equally to all that class of persons who play baseball on the first day of the week, commonly called Sunday, where a fee is charged for such exhibition. It neither directly nor indirectly grants privileges or immunities to one citizen, or class of citizens, or denies them to another. The graduation of penalties for offenses differing in their circumstances and surroundings is a matter wholly within the competence and discretion of the legislature, and in this case we discover no abuse of that discretion.

As a result of these views, we are of the opinion that the affidavit in this case was sufficient in form and substance; that the act approved April 4, 1885 (Acts 1885, p. 127), sec-

tion 2087 Burns 1894, is constitutional; and that it is not void for uncertainty.

The judgment is reversed, with instructions to overrule the motion to quash the affidavit, and for further proceedings in accordance with this opinion.