STATE OF INDIANA, EX REL. NEJDL *v.* BOWMAN,
AUDITOR OF STATE.

[No. 25,353.  Filed April 19, 1927.  Rehearing denied August 5, 1927.]

1. STATUTES.—*Amendatory act takes the place of the act amended.*— Generally, an amendatory act or section of an act takes the place of and supersedes the act or section of the act which it amends.  p. 443.

2. STATUTES.—*Effect of amendment of statute by reenacting a statute with changes of the language thereof.*—An amendment of a statute or section of an act by using the exact language of the amended act except as changed by the amendment abrogates the language of the original act which is supplanted by different words or language in the amendment, and all those provisions or words of the original act or section which are not repeated in the amended statute are abrogated, and are of no force or effect whatever.   p. 445.

3. STATUTES.—*Valid law may go into effect although some of its provisions are not operative until later.*—A law may be enacted and go into effect upon the proclamation of the Governor even though some provisions of the act are not to become operative until a future time or upon a stated contingency.   p. 446.

4. STATUTES.—*When laws go into effect.*—Under the Constitution, a law takes effect from the time of its distribution throughout the state, except as otherwise provided by the Constitution, to wit, in emergency cases.   p. 446.

5. STATUTES.—*Law of 1881 fixing pay of members of legislature repealed by amendment of 1925.*—Section 1 of the act of 1881 fixing the pay of the members of the legislature (Acts 1881 p. 517, §7561 Burns 1914), having been repealed by the amendment thereof in 1925 (Acts 1925 p. 284, §8080 Burns 1926) not to become effective as to such members until 1929, there was no law in force in 1927 providing for compensation for the members of the session of that year.   p. 446.

6. STATUTES.—*Act of 1927 fixing pay of members of the legislature at $10 per day is valid.*—The act of the General Assembly of 1881 fixing the pay of members of the legislature at $6 per day (Acts 1881 p. 517, §7561 Burns 1914), having been supplanted by the amendatory act of 1925 (Acts 1925 p. 284, §8080 Burns 1926) not to become effective as to such members until 1929, there was no law in force fixing the compensation of members of the legislature of 1927, and the General Assembly had the authority, under §29 of Art. 4 of the Constitution, to fix such compensation, and §6 of the act of 1927 (Acts 1927 p. 1) fixing the pay of such members is valid and does not violate the provision of the Constitution prohibiting the legislature from increasing its own pay.   p. 448.

7. STATUTES.—*Act of 1927 fixing legislators' pay not contrary to public policy or against public interest.*—The act of 1927 fixing the compensation of members of the legislature at $10 per day (Acts 1927 p. 1) is not invalid because of being contrary to public policy or against the public interest since compensation does not greatly exceed personal expenses of members during the session and is probably insufficient to pay expenses of their families at home.   p. 466.

8. MANDAMUS.—*Duty of auditor of state as to legislators' pay properly enforced by mandate.*—The act of 1927 appropriating the expenses of

the legislature and also fixing the legislators' pay clearly points out the duty of the auditor of state, and such duty was properly enforced by mandate and the fact that some one might attack law as unconstitutional did not justify auditor's refusal to perform legal duty. p. 467.

From Marion Superior Court (A 38,388); *Joseph M. Milner,* Judge.

Action of mandate on the relation of James J. Nejdl, State Senator, against Lewis S. Bowman, Auditor of State, to compel him to draw a warrant in favor of relator for his salary as a member of the state Senate in 1927. From a judgment for the defendant, the relator appeals. *Reversed.*

*Louis B. Ewbank* and *Rinier, Givan & Anderson,* for appellant.

*Arthur L. Gilliom,* Attorney-General, for appellee.

*Ralph K. Lowder,* Amicus Curiae.

TRAVIS, J.—This is an action to mandate the auditor of state to draw a warrant in favor of the relator for compensation for his services as a senator of the State of Indiana, acting as such in the regular session of the General Assembly of the State of Indiana in 1927, at the rate of $10 per day, to comply with §6 of House Bill No. 1, passed over the veto of the Governor, on January 17, 1927, and declaring an emergency. The action is declared in the complaint in two paragraphs, both of which aver that the relator was duly elected as a member of the General Assembly of the State of Indiana November 4, 1924, to serve four years in the Senate as such senator from Lake county, Indiana; and that he was duly qualified and sworn as a member of said General Assembly, and that since said date he has continued to serve, and is now serving, as a member of said General Assembly at the session which commenced on January 6, 1927, and had served for twelve days during such

session, and that this action is brought on his own behalf and on the behalf of all the other members of the General Assembly of both the Senate and House of Representatives who are in like circumstances as this relator. It is further averred that the lieutenant governor, as presiding officer, and the other qualified officers of the Senate of the State of Indiana, ordered and directed the defendant, as auditor of the State of Indiana, to draw a warrant in favor of the relator in the sum of $120 as compensation for twelve days services rendered by him as such senator and member of the General Assembly at the rate of $10 per day, to wit: from January 6, 1927, to January 18, 1927, and the relator had demanded of defendant, as such auditor of state, that he draw his warrant for said sum in favor of relator in payment for his services, which request defendant, as such auditor of state, refused and still refuses to do.

The first paragraph of complaint averred in addition to the above that prior to April 5, 1925, a statute had been in force which provided that pay of members of the General Assembly should be $6 per day while in actual attendance, but that, on said date of April 25, 1925, an act took effect which expressly amended said prior act, so as to provide that from and after January 1, 1929, the pay of members of the General Assembly should be $10 per day while in actual attendance, but entirely omitted any provision whatever for the payment of compensation in any sum whatsoever to members of the General Assembly for attendance and service in 1927, or at any time before January 1, 1929, so that there was not and had not been since April 25, 1925, any law whatever in force in Indiana which provided for payment to such members of any compensation whatever until such a law was enacted in 1927 as in the first paragraph of complaint before stated. It further averred that the Constitution of the State of Indiana provides that the

members of the General Assembly shall receive for their services a compensation to be fixed by law; and that the statute which took effect January 17, 1927, fixed the compensation of members of the General Assembly at $10 per day while in actual attendance; and that since April 25, 1925, there has been no other law whatever providing for the payment of compensation to such members.

To this complaint, defendant, the auditor of state, demurred upon the ground that the complaint does not state facts in either paragraph sufficient to state a cause of action. The trial court sustained the demurrer to the complaint, and upon plaintiff's refusal to plead over or amend the complaint, the court rendered judgment that the plaintiff take nothing and the defendant recover his costs.

The sole error presented is predicated upon the court's ruling which sustains appellee's demurrer to appellant's complaint, and each paragraph thereof. The assignments of error present for decision the constitutionality of §6 of House Bill No. 1, passed over the veto of the Governor, on January 17, 1927. The propositions presented by appellant are: (a) That the Constitution does not forbid the legislature in one session to repeal, or to amend out of existence, any provision of law enacted by such legislature at any previous session; and applies the proposition to §1, Art. 4, Constitution of Indiana, which provides, that the legislative authority of the state vests in the General Assembly; and (b) that §1 of the act of the General Assembly passed by it in 1881, which fixed the compensation of members of the General Assembly at $6 per day, ceased to exist upon its amendment in 1925, except as in its amended form, as amended by the act passed in 1925 (Acts 1925, ch. 109, p. 284); and corollary thereto; (c) that the only law in force in January, 1927 (the act passed by the General

Assembly in 1925, by which the compensation of the members of the General Assembly. was fixed at $10 per day, from and after January 1, 1929), is the statute here in question, which provides that $10 per day be paid as compensation to the members of the general Assembly for the session of 1927; and that it does not increase the compensation as prohibited by the Constitution, (§28, Art. 4, Constitution of Indiana).

The acts of the General Assembly which fixed the compensation of its members are here set out in the chronological order of their passage by the General Assembly, beginning with the act approved April 21, 1881. The General Assembly, in special session in 1881, passed an act entitled, "An act concerning the General Assembly, the business therein, and committees and clerks thereof." (Approved April 21, 1881); the first section of which act only is applicable here is as follows:

"Section 1. Be it enacted by the general assembly of the State of Indiana, That the pay of the members of the General Assembly shall be six dollars per day while in actual attendance, or absent by leave, or on business of the General Assembly, or unable to attend from sickness, and five dollars for every twenty-five miles they may travel from their usual places of residence to the seat of government and back: Provided, That when a special session is called to assemble on the day succeeding the expiration of any other session, no mileage shall be allowed members therefor." Acts 1881, ch. 54, p. 517.

The compensation of members of the General Assembly continued under the act passed in 1881 until 1925, which is admitted by both appellant and appellee, when, at the regular session of the general assembly, it enacted the following law:

"An Act to amend section 1 of an act entitled 'An Act concerning the general assembly, the busi-

ness therein, and committees and clerks thereof,' approved April 21, 1881.

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That section 1 of the above entitled act be amended to read as follows: Section 1. That from and after the first day of January, 1929, the pay of the members of the General Assembly shall be ten dollars ($10) per day while in actual attendance, or absent by leave, or on business of the General Assembly, or unable to attend from sickness, and five dollars ($5) for every twenty-five miles they may travel from their usual places of residence to the seat of government and back: Provided, That when a special session is called to assemble on the day succeeding the expiration of any other session, no mileage shall be allowed members, therefor. The speaker of the house of representatives and the lieutenant-governor for acting as president of the senate shall each receive compensation for his services at the rate of twelve dollars ($12) per day."

Acts 1925, ch. 109, p. 284. The pertinent parts of the statute (which contains §6 now under review for construction) are as follows:

"An act to appropriate $100,000.00 to defray the expenses of the 75th general assembly of the State of Indiana, providing how the expenses and employees thereof shall be incurred and paid, how the officers, employees and assistants thereof shall be selected, fixing the per diem and mileage of members of the general assembly, repealing all laws in conflict therewith and declaring an emergency.

"Section 1. Be it enacted . . . That the sum of $100,000.00 be and the same is hereby appropriated . . . to defray the expenses of the 75th general assembly of the State of Indiana . . .

"Section 2. It shall be the duty of the auditor of state to audit the accounts and draw his warrants upon the treasurer of state for the per diem and mileage of senators and representatives . . . upon the certificate, in the case of senators, of the

president of the senate. . . . Setting forth the time of service and amount of mileage and allowance to which such senators and representatives may be entitled. . . .

"Section 6. That the pay of the members of the 75th General Assembly shall be ten dollars ($10.00) per day while in actual attendance, or absent by leave, or on business of the General Assembly, or unable to attend from sickness, and five dollars ($5.00) for every twenty-five miles they may travel from their usual places of residence to the seat of government and back, and the speaker of the House of Representatives and the lieutenant governor for acting as president of the senate during the 75th General Assembly shall each receive compensation for their services at the rate of twelve dollars ($12.00) per day.

"Section 7. All laws and parts of laws in conflict herewith are hereby repealed.

"Section 8. Whereas an emergency exists for the immediate taking effect of this act, the same shall be in full force and effect from and after its passage."

(Passed over the Governor's veto, January 17, 1927.)

The crucial point in dispute between appellant and appellee is the date when the act passed by the General Assembly in 1925 became a law or went into effect. Appellant claims that this act was in effect from and after its passage, approval by the Governor, publication, distribution, and proclamation by the Governor. Appellee claims that the act will be in effect from and after January 1, 1929, and not before that date. The General Assembly, at its regular session in 1925, had two ways by which it could have changed the pay of its members: first, by a new act; and second, by an amendment of the old act. The General Assembly knew the law and rules of construction which applied to each course under which it might proceed in making the change of compensation to its members, and the time

when such compensation should begin. If it should have pursued its course to make the change by use of an entirely new act, in the language of amended §1 of the act of 1925, it will be conceded that it would not, in that form, repeal §1 of the act of 1881. It will add nothing to the argument, in assisting in construing the amended act, to premise that such new act, had it been passed without a direct or indirect repeal, would have repealed §1 of the act of 1881 by implication to take effect January 1, 1929; and had the General Assembly pursued its course by a new act, it may be admitted that §1 of the act of 1881 would have been effectual until January 1, 1929, at which time it will be repealed by implication because it could not stand as against the new act being entirely incompatible with it. The General Assembly, in choosing the route to accomplish its purpose by way of amendment, adopted all the rules of construction applicable in construing the amendatory act and the act which is sought to be amended. There is no plausible reason in the letter of the amendatory act itself why the general rules of such construction do not apply here. Generally, an amendatory act or section of an act, takes the place of and supersedes the act or section of the act which it amends. This rule is so strong in the jurisprudence of the different judicial sections of the United States, that it is reduced to a legal axiom that an amended statute is to be construed as if it had read from the beginning as it does with the amendment added to it, or incorporated in it. *Metsker* v. *Whitsell* (1914), 181 Ind. 126, 140, 103 N. E. 1078; *Blakemore* v. *Dolan* (1875), 50 Ind. 194, 204; *Smith* v. *State* (1924), 194 Ind. 686, 688, 144 N. E. 471; *Dimpfel* v. *Beam* (1907), 41 Colo. 25, 91 Pac. 1107; Black, Interpretation of Laws (1896), §131; *Goldman* v. *Kennedy* (1888), 49 Hun. (N. Y.) 157, 1 N. Y. Supp. 599; *Kamerick* v. *Castleman* (1886), 21 Mo. App. 587; *Holbrook* v. *Nichol* (1864), 36 Ill. 161; *Conrad* v. *Nall* (1872),

24 Mich. 275; *Ludington* v. *United States* (1879), 15 Court Claims 453; *Farrell* v. *State* (1892), 54 N. J. Law 421, 24 Atl. 725; *McKibben* v. *Lester* (1859), 9 Ohio St. 627; Lewis' Sutherland, Statutory Construction, §237 (133). *Walsh, Treasurer,* v. *State, ex rel.* (1895), 142 Ind. 357, 41 N. E. 65, 33 L. R. A. 392.

Had the original §1 of the act passed in 1881 been then as it was amended by the act passed in 1925, it would not have been invalid because of its being in the language of the amended section. The General Assembly might have prepared the amendatory act so that it fully and unequivocally provided that the compensation of its members should be $6 per day until January 1, 1929. Or it might have incorporated in the amended section that such amended section was not to go into effect until the prospective time named in the act when the compensation of $10 per day should begin. The General Assembly did neither of those things, although it was well known to each of its members that the act might have been so worded. The General Assembly sought to amend by using the exact language, as far as it went, of the original §1 of the act of 1881 except the amount of compensation and the last sentence of the amendment. Any words or language replaced by other words or language in the amendment abrogate the language of the original section which is supplanted by different words or language in the amendment, so that all those provisions or words of the original section which are not repeated in the amended statute are abrogated and are therefore of no force or effect whatever. *People* v. *Supervisors* (1876), 67 N. Y. 109, 23 Am. Rep. 94; *Reid* v. *Smoulter* (1889), 128 Pa. St. 324, 18 Atl. 445, 5 L. R. A. 517; *Goodno* v. *City of Oshkosh* (1872), 31 Wis. 127; *Sener* v. *Ephrate Borough* (1896), 176 Pa. St. 80, 34 Atl. 954; *Somers* v. *Commonwealth* (1899), 97 Va. 759, 33 S. E. 384.

This amendment was enacted according to the provision of the Constitution of Indiana, §21, Art. 4, (at least the manner of its adoption is not questioned); and having been so enacted and being a statutory amendment, it operates to obliterate anything in the original section of the act of 1881 that is repugnant to or inconsistent with the amendatory act. *McDowell* v. *Warden of Reformatory* (1911), 169 Mich. 332, 135 N. W. 265.

It is not inconsistent with the rules of construction for an act to go into effect as a law as provided by the Constitution; and in this state, upon the final proclamation of the Governor; even though some provisions of the act are not to become operative until a future time or upon a stated contingency. Under the Constitution a law takes effect from the time of its distribution by authority throughout the state except as otherwise provided by the Constitution, to wit: in emergency cases. *Sudbury* v. *Board, etc.* (1901), 157 Ind. 446, 452, 62 N. E. 45; *State, ex rel.,* v. *Indiana Board of Pharmacy* (1900), 155 Ind. 414, 58 N. E. 531.

Without anything else standing in the way, under rules above stated, amended §1 replaced original §1 of the act of 1881 as fully and effectually as if the amended section had been the original section when originally adopted. It must follow, original §1 being so obliterated and supplanted, and the amendatory, section by its terms providing compensation to begin only on January 1, 1929, there was no law in force which provided for compensation for the session of the General Assembly in 1927.

Appellee claims further, that inasmuch as compensation as provided by the amendatory act does not begin until January 1, 1929, the power and authority of amended §1 of the act of 1881, continues in force and effect until January 1, 1929, for the reason that the General Assembly is without power to defeat the com-

pensation of members of the General Assembly as provided in former act, unless and until it provides by other legislation some compensation. In other words, appellee contends such members are entitled to compensation theretofore fixed without power of repeal unless other compensation is fixed by virtue of the word "shall" in the sentence "The members of the General Assembly *shall* receive for their services a compensation to be fixed by law." §28, Art. 4, Constitution of Indiana. To so construe the Constitution, we must read it that not only shall members of the General Assembly receive, but that they *shall* fix such compensation by law, and that, being once fixed, compensation cannot be entirely taken away. But the Constitution by this provision does not provide that the General Assembly *shall* fix such compensation by law. It only provides that it is *to be* fixed by law, and when there is a statute which so fixes such compensation, the members of the General Assembly *shall* receive such compensation. To hold according to the contention of appellee, it would be necessary to construe the Constitution that the General Assembly had power as provided in this instrument to amend certain laws but not others, none of which are designated therein. The language of the Constitution is plain and does not need construction.

Argument is used by appellee to the effect that if there is no compensation provided for the 1927 session of the General Assembly or any other session of this body, it might act violently and create a compensation for itself at the then session, which would violate all good judgment and sound reason; and supported this argument by the language of the Constitution which provides that "no increase of compensation shall take effect during the session at which such increase may be made," using the premise to substantiate the statement that the $6 *per diem* created by the act of 1881 is still in force until the

*per diem* of $10 created by the amendatory act becomes payable. This seems to be a violent construction clearly not within the literal interpretation of the words of §28, Art. 4, of the Constitution.

It appears plain from the literal wording of the amendatory act that it was not the intent of the legislature to continue in force and effect §1 of the act of 1881 which it amended, without any words to continue the *per diem* compensation of $6 against the general rules of statutory construction.

It is, therefore, held that the amendatory act of 1925 entirely supplanted and took the place of the section of the act which it sought to amend, to wit: §1 of the act of 1881 (Acts 1881, ch. 54); which left no law theretofore fixed by the General Assembly in force which provided for the *per diem* compensation of members of the General Assembly at any general or special session after the session of the legislature in 1925, and prior to the regular session of 1929. There being no law in force for such compensation, the General Assembly had the authority, under §28, Art. 4, of the Constitution of Indiana, to fix by law compensation for the members of the General Assembly for service at its session in 1927. Section 6 of House Bill No. 1, which became an enrolled act by virtue of the passage of the act over the veto of the Governor on January 17, 1927, is constitutional.

The trial court committed error by its action in sustaining appellee's demurrer to appellant's complaint. The cause is remanded to the trial court and the trial court is ordered to overrule appellee's demurrer to appellant's complaint, and for further action not inconsistent with this opinion.

Judgment reversed.

Gemmill, C. J., concurs.

Martin, J., concurs in result and files concurring opinion.

Myers and Willoughby, J. J. dissent; Willoughby, J., filing dissenting opinion.

CONCURRING OPINION.

MARTIN, J.—I concur in the result reached by the court for the reason hereinafter given.

The exact provisions of the Constitution and statutes which present the question here considered, are as follows:

Constitution, Art. 4, §29, §132 Burns 1926: "The members of the General Assembly shall receive for their services a compensation to be fixed by law; but no increase of compensation shall take effect during the session at which such increase may be made. . . ."

Acts 1881 p. 517, §1, §7561 Burns 1914:

"Sec. 1. . . . . the pay of the members of the General Assembly shall be $6.00 per day . . . ."

Acts 1925 p. 284, §8080 Burns 1926: "Section 1. . . . That Section one of the above entitled act (Act 1881 p. 517) be amended to read as follows: Section 1. That from and after the first day of January, 1929, the pay of the members of the General Assembly shall be $10.00 per day . . . ."

Acts 1927, ch. 1 (House Bill No. 1): "Section 6. That the pay of the members of the 75th General Assembly shall be ten dollars ($10.00) per day . . . ."

The appellant contends that when §6, House Bill No. 1 was passed, §1 of the Act of 1881 was not in force, having been entirely superseded and expunged by the amendatory act of 1925 which went into effect and operation on April 25, 1925; and that §6 of House Bill No. 1 does not increase the compensation as prohibited by the Constitution, since at the time of its passage there was no pay

VOL. 199—29

"fixed by law," and it became necessary for the general assembly to fix the pay of its members. This view is expressed at length in the main opinion.

The appellee contends that the act of 1925 is now only a "potential" law and will not become operative as an amendment of the act of 1881 until January 1, 1929, and that when §6, House Bill No. 1 of 1927 was passed, §1 of the act of 1881 was still in force and that therefore an unconstitutional increase of salary was attempted; and also that even if §1 of the act of 1881 had ceased to exist, §6, House Bill No. 1 would still be unconstitutional because the $10 pay which it provides is an "increase" over the last pay provided for, which was the $6 pay in the act of 1881. This view is expressed at length in the dissenting opinion.

Erudite reasoning, close distinctions and lengthy arguments both orally and by briefs, have marked the progress of this appeal, and an examination of the principal and dissenting opinions discloses that a close and difficult question of statutory construction has been presented. An open-minded examination of both of these able opinions also shows that this is not a case where it can be said that §6, House Bill No. 1 of the 1927 General Assembly is clearly, plainly and undoubtedly in contravention of the Constitution and invalid. It must be admitted that there is some doubt about the proper construction of these three acts when four of the judges of this court are evenly divided in their opinions, but under the well known rules of law laid down in the cases hereinafter cited all doubts must be resolved in favor of a laws validity and if possible an interpretation will be adopted which will prevent a conflict between different laws.

The courts approach the grave and delicate duty of deciding constitutional questions with great deliberation and caution, giving to them the most careful and serious

consideration, *State* v. *Hogreiver* (1899), 152 Ind. 652, 53 N. E. 921, 45 L. R. A. 504; *Dartmouth College* v. *Woodward* (1819), 4 Wheat. (U. S.) 518, 4 U. S. (Law Ed.) 629; *Nicol* v. *Ames* (1898), 173 U. S. 509, 43 U. S. (Law Ed.) 786, and are reluctant to strike down acts of the legislature as unconstitutional. *Thorlton* v. *Guirl Drainage Co.* (1916), 184 Ind. 637, 112 N. E. 5.

This court, in *Carr* v. *State* (1911), 175 Ind. 241, 94 N. E. 1071, said: "The power given to courts to overthrow an act of the legislature is the highest and most solemn function with which they are vested, and it is to be exercised only under the compulsion of the clearest and most positive conviction that some constitutional provision has been violated by the lawmaking body in the enactment of the law assailed"; and in *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 41 N. E. 145, 51 Am. St. 174, note 33 L. R. A. 213, said: "To declare an act void for unconstitutionality in a doubtful case through a mistake of a court of last resort would have the effect not only of paralyzing one of the co-ordinate departments of the State government, but it would be a usurpation of power by the court, a power withheld from it by the people in the constitution."

A statute comes before the courts sustained and authenticated by the sanction and approval of a great co-ordinate department of government, hence there is a strong presumption in its favor of its validity, and this presumption has been recognized in a long series of cases in practically every court of the land. 6 R. C. L. 97; *Koplovitz* v. *Jensen* (1926), 197 Ind. 475, 151 N. E. 390; *McPherson* v. *State* (1909), 174 Ind. 60, 90 N. E. 610, 31 L. R. A. (N. S.) 188; *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313; *State, ex rel.,* v. *Roby, supra; State* v. *Hogreiver, supra.*

A decent respect for the wisdom, integrity and patriotism of the legislative body which enacts a law re-

quires this presumption in favor of its validity until the contrary is shown beyond reasonable doubt, and therefore if there is any reasonable doubt or hesitation in the mind of the court as to the validity of the statute, it must be resolved in favor of the legislature and unless the invalidity appears clearly, palpably and plainly, the courts should not exercise their high function and authority to pronounce legislation to be contrary to the Constitution. *State* v. *Hogreiver, supra; McPherson* v. *State, supra; State, ex rel.,* v. *Roby, supra; Robinson, Treasurer,* v. *Schenck* (1885), 102 Ind. 307, 1 N. E. 698; *Bush* v. *City of Indianapolis* (1889), 120 Ind. 476, 22 N. E. 476; *State* v. *Louisville, etc. R. Co.* (1911), 177 Ind. 553, 96 N. E. 340, Ann. Cas. 1914D 1284; *Henderson, Auditor,* v. *State, ex rel.* (1894), 137 Ind. 552, 36 N. E. 257, 24 L. R. A. 469; *Carr* v. *State, supra; Fletcher* v. *Peck* (1810), 6 Cranch (U. S.) 87, 3 Law Ed. 162; *Munn* v. *Illinois* (1876), 94 U. S. 113, 24 Law Ed. 77; *Sinking-Fund Cases* (1878), 99 U. S. 700, 25 Law Ed. 496; *Henderson Bridge Co.* v. *Henderson City* (1898), 173 U. S. 592, 43 Law Ed. 823; *Fairbank* v. *United States* (1900), 181 U. S. 283, 45 Law Ed. 862. This has been the uniform conclusion of the Supreme Court of the United States as is shown by the following brief quotations from opinions by Chief Justice Marshall, Chief Justice Waite and Justice Harlan, respectively: "The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." *Fletcher* v. *Peck, supra.* "Every statute is presumed to be constitutional. The courts ought not to declare one to be unconstitutional, unless it is clearly so. If there is doubt, the expressed will of the legislature should be sustained." *Munn* v. *Illinois, supra.* "All doubt as to the validity of legislative enactments must be resolved, if possible, in favor of the binding force of

such enactments." *Henderson Bridge Co.* v. *Henderson, City, supra.*

The courts will not resort to construction for the purpose of giving acts of the legislature such an interpretation as will show a conflict between them, or any of them, and the Constitution; but where statutes are capable of a construction that will make them constitutional they will be so construed, and their validity upheld, on the theory that the legislature intended to enact a constitutional law. *Thorlton* v. *Guirl Drainage Co., supra; School Town of Andrews* v. *Heiney* (1912), 178 Ind. 1, 98 N. E. 628, 43 L. R. A. (N. S.) 1023, Ann. Cas. 1915B 1136; *Crittenberger, Auditor,* v. *State, etc., Trust Co.* (1920), 189 Ind. 411, 127 N. E. 552; *Cincinnati, etc., R. Co.* v. *McCullom* (1915), 183 Ind. 556, 109 N. E. 206,. Ann Cas. 1917E 1165; *State* v. *Louisville, etc., R. Co., supra.*

From the foregoing review of decisions it is clear that any doubt as to the construction of the three acts in question, should be so resolved as to uphold if possible the validity and constitutionality of all of them, and since the act of 1927 reasonably can be construed to be constitutional it should be so held. I accordingly concur in the decision of the court that the act in question is valid, and that the trial court committed error in sustaining appellee's demurrer to appellant's complaint, and that the judgment should therefore be reversed.

### Dissenting Opinion.

WILLOUGHBY, J.—I cannot agree with the majority opinion in this case. This was an action for mandate to require the auditor of state to draw a warrant for the relator and each of the other members of the General Assembly at the rate of $10 per day, in compliance with the provisions of §6 of House Bill No. 1, passed over the veto of the Governor, on January 17, 1927, and declaring an emergency.

The appellant relator, a member of the Senate of Indiana, filed a complaint of two paragraphs in the name of the State of Indiana, on his relation, asking that the appellee auditor of state, as such auditor, be compelled by mandamus to obey said act of 1927, and to draw and issue warrants for the relator and other members of the General Assembly at the rate of ten dollars ($10) per day, as fixed by that act. Both paragraphs allege substantially the same facts. To this complaint the defendant filed a demurrer for alleged want of fact sufficient to constitute a cause of action. The trial court sustained the demurrer to the complaint and each paragraph thereof, to which plaintiff excepted. The court rendered judgment on such demurrer that the plaintiff take nothing and that the defendant recover his costs. From this judgment the appellant appeals.

The error assigned is that the trial court erred in sustaining the demurrer of the defendant to plaintiff's complaint and each paragraph thereof.

The cause for demurrer as alleged is that said complaint does not state facts in either paragraph thereof sufficient to state a cause of action against this defendant. The legislature of 1925 passed an act to amend §1 of an act entitled, An Act Concerning the General Assembly, the business therein, and committees and clerks thereof, approved April 21, 1881. The amendatory act of 1925, Acts 1925 p. 284, is as follows:

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That Section one of the above entitled act be amended to read as follows: 'Section 1. That from and after the first day of January, 1929, the pay of the members of the General Assembly shall be $10.00 per day while in actual attendance, or absent by leave, or on business of the General Assembly, or unable to attend from sickness, and $5.00 for every 25 miles they may travel from their usual places of residence to the

seat of government and back; Provided that when a special session is called to assemble on the day succeeding the expiration of any other session no mileage shall be allowed members therefor. The speaker of the House of Representatives and the lieutenant-governor for acting as president of the Senate shall each receive compensation for his services at the rate of $12.00 per day.'"

The act of 1881 which was amended by this amendatory act is as follows:

"An Act concerning the General Assembly and the business therein and committees and clerks thereof: Section 1. Be it enacted by the General Assembly of the State of Indiana, that the pay of the members of the General Assembly shall be $6.00 per day while in actual attendance, or absent on leave, or on business of the General Assembly, or unable to attend from sickness, and $5.00 for every 25 miles they may travel from their usual places of residence to the seat of government and back; Provided, that when a special session is called to assemble on the day succeeding the expiration of any other session, no mileage shall be allowed members therefor." See Acts 1881 p. 517, §7561 Burns 1914.

It is claimed by the appellant in this case that the act of 1925 repealed §1 of the act of 1881 and provided for compensation for the legislature which should meet after January 1, 1929, and that there was no provision in the act of 1925, or any other law of the State of Indiana for paying the members of the legislature of 1927 anything for their services or for mileage.

Section 28, Art. 4, Constitution of Indiana, §131 Burns 1926, provides that the members of the General Assembly shall receive for their services a compensation to be fixed by law, but no increase of compensation shall take effect during the session at which such increase may be made. No session of the General Assembly except the first under this Constitution shall extend beyond the

term of sixty-one days nor any special session beyond the term of forty days.

It appears from this provision of the Constitution that the legislature is required to provide by law a compensation for the members of the General Assembly. This section of the Constitution also provides that no increase of compensation shall take effect during the session at which such increase was made.

A decision on the merits of this case necessarily involves the 1925 law, and a determination of its legal effect at the time the 1927 law was enacted. According to appellant, the amendment of the 1881 law in 1925 became effective upon the proclamation of the Governor only to the extent of rendering both the 1881 and the 1925 laws inoperative until January 1, 1929. No one claims that the 1925 legislature intended to pass a law which would leave the members of the General Assembly of 1927 without compensation for their services, but, by construction alone, appellant would have us give the 1925 law that effect, although it expressly provides "that from and after the first day of January, 1929, the pay of the members of the General Assembly shall be Ten Dollars ($10) per day," etc., thus expressing an intention of preserving the old law by positively fixing the time when the new law should become operative.

Courts do not pass upon the legislative motive, wisdom or justice of statutes (*Wells* v. *Davis* [1916], 185 Ind. 152, 113 N. E. 237), nor do they construe statutes out of existence unless they are so doubtful or uncertain in meaning as to leave no intention of a definite purpose, but on the contrary, if by construction the intent of the legislature can be ascertained, such intention must govern, although the strict letter of the statute may not be followed. *Arnett* v. *State, ex rel.* (1907), 168 Ind. 180, 80 N. E. 153. This rule of construction so long followed in this state is subject to the exception that

where an act is repugnant to the Constitution, it is void regardless of the intent of the legislature.

It has been held that it is the duty of the courts to uphold an act of the legislature if it is possible to do. so without violating the Constitution, and in doubtful cases, to resolve the doubt in favor of the action of the legislature; but where it is clear that the law offends a constitutional inhibition, then it is the duty of the courts to uphold the Constitution, rather than the statute which is in violation thereof. The Supreme Court is not authorized to pass upon or question the motives which actuated the legislature in passing an act, the constitutionality of which is in question, the concern of the court being whether the act as finally passed is or is not valid. *Jackson, Secy.*, v. *State, ex rel.* (1924), 194 Ind. 248, 142 N. E. 423.

The construction placed upon the amendatory act of 1925 by appellant would make that act unconstitutional while the construction placed upon it by appellee would render it constitutional.

Where a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, that one will be adopted, if reasonable, which will rescue the act from unconstitutionality. *Crittenberger, Auditor*, v. *State, etc., Trust Co.* (1920), 189 Ind. 411, 127 N. E. 552; *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7.

The question then is presented, is there any reasonable construction of the act of 1925, which will not be in conflict with the Constitution of the State of Indiana? Reason and authority point to such construction.

In approaching this question it is proper to take into consideration the practical construction given this and a similar provision in the Constitution of 1816, by the General Assembly itself, from the first session in 1816, to the time when House Enrolled Act No. 1 was enacted.

The Constitution of 1816 fixed a maximum compensation for the members of the General Assembly at $2 per day until the year 1819 (§16, Art. 11, Constitution of 1816) thereafter leaving such compensation to regulation by law with the proviso, "but no law, passed to increase the pay of the members of the General Assembly, shall take effect until after the close of the session at which such law shall have been passed."

Under that Constitution the legislature passed several acts fixing such pay. Thus, an act (ch. XXXV, Acts 1816 p. 171) was passed, which among other provisions for the pay of other officers and employees, fixed the pay of members of the General Assembly at $2 per day (the amount allowed by the Constitution); the next act (ch. XXVIII, Acts 1818 p. 67) was passed in 1818, this time providing also for the pay of the speaker of the house and president of the senate and fixing their pay with that of the members of the General Assembly at $2 per day "until otherwise directed by law"; the next act was passed in 1837 (p. 302, R. S. 1838) and provided such pay effective after "August next" at $3 per day; the next act (§11, ch. IV, Acts 1843 p. 13) provided among other salaries, salaries for such members (including the then session) at $3 (the rate fixed in the act of 1837) but only for the first six weeks of the session, and $1.50 per day for the remaining time of a session; this remained the law until an act, passed in 1851 (ch. CX Acts 1851 p. 120) became operative which fixed such pay at $3 for the entire session, exclusive of the then session so as to avoid an unconstitutional increase over the pay fixed in the act of 1843, in respect of the time after the first six weeks of the session; by force of cl. 1 of Art. 18, of the Constitution of 1851, the said act of 1851 was in force and fixed the pay of members of the first session of the General Assembly under the new Constitution.

In 1852, the legislature enacted a statute, (p. 306

R. S. 1852) fixing the pay at $3 per day, the same as the act of 1851, which remained in force for the first session by virtue of Art. 18 of the Constitution; next in 1865 (ch. XIX, Acts 1865 p. 64) an act was passed fixing the pay at $5 per day; next in 1872 (Acts 1872 pps. 31, 32) an act was passed fixing the pay at $8 per day; next an act was passed in 1875 (Acts 1875 p. 52) fixing the pay at $6 per day; next the act of 1881 (Acts 1881 p. 517) was passed, fixing the pay at $6 which act has been operative ever since and will be until January 1, 1929; next the act of 1925 (Acts 1925 p. 284) was passed amending §1 of the act of 1881, changing the rate of pay from $6 to $10 per day *from and after January 1, 1929.*

The act of 1925 provides that from and after January 1, 1929, the pay of the members, etc., which indicates that it was not the intention of the legislature that that act should be effective until after January 1, 1929. It may be conceded that the amending act obliterates the section which it amends as soon as the amendment becomes effective, but the appellee claims that the amendatory act of 1925 is not yet in force and will not become effective until January 1, 1929. The appellant claims that the amendatory act of 1925 went into effect immediately upon the distribution of the acts by authority and his reason for such claim is, as he says, that the language of the enactment is, "be amended as follows." His claim is that the language of the enacting clause being in the present tense means that the act is to take effect immediately upon the distribution of the acts by authority. The appellant's contention is not sustained by any authority cited or brought to our attention.

Section 104 Burns 1926, §1, Art. 4, Indiana Constitution, provides that no act shall take effect until the same shall have been published and circulated in the several counties of this state by authority, except in case

of emergency, which emergency shall be declared in the preamble or in the body of the act.

It may be observed that this section of the Constitution does not provide that the act shall take effect when the same shall have been published and circulated in the several counties of this state by authority. The provision merely states that no act shall take effect until the same shall have been so published, circulated, etc. That does not mean that the act shall take effect when it has been so distributed and published. In this act the amending section itself provides that it shall take effect from January 1, 1929. The language is positive. On that subject therefore the publication and distribution of the act would not put it in force, but it would be an act which took effect at the time provided for in the act itself. No law shall be passed, the taking effect of which, shall be made to depend upon any authority, except as provided in the Constitution, Art. 1, §25, Constitution of Indiana, §77 Burns 1926.

That being the case the act of 1881, which was amended by the act of 1925, is still in force and has not been in any manner changed or affected by the passage of the act of 1925. When this act is so construed it does not conflict with the provisions of the Constitution of the State of Indiana.

The conclusion reached is that the act of 1881 fixing the compensation of members of the General Assembly was in force on January 17, 1927. It follows that §6 of the act appropriating money to defray expenses of the seventy-fifth General Assembly which provides that the pay of the members of the seventy-fifth General Assembly shall be $10 per day, etc., is unconstitutional and void for the reason that at the time of its passage there was a valid law of the State of Indiana providing that the *per diem* of the members of the legislature should be $6 per day. And this §6 which raised that amount

from $6 to $10 per day is in violation of §28, Art. 4, of the Constitution of the State of Indiana, §131 Burns 1926. This view is supported by many authorities among which are the following:

In the case of *Thiel* v. *Philadelphia* (1914), 245 Pa. St. 406, 91 Atl. 490, the court said: "It is well settled that where the provisions of a revising statute are to take effect at a future period, or upon the happening of a certain contingency, or the doing of certain acts, and the statute contains a clause repealing former laws on the same subject, the repealing clause does not take effect until the provisions of the repealing act go into operation. Smith on Statutory Construction §783; *McArthur* v. *Franklin*, 16 Ohio St. 193. . . . This court recognized the principle in *Com.* v. *Heller*, 219 Pa. 65, 67 Atl. 925."

In *State* v. *Paul* (1915), 87 Wash. 83, 151 Pac. 114, the court holds that an express repealing clause in a statute does not have any force prior in time to that of other provisions thereof, in the absence of clear expression therein to the contrary. In the early case of *Spaulding* v. *Alford* (1822), 1 Pick. (18 Mass.) 33, Justice Wilde, speaking for the court touching the effect of a repealing clause, where the going into effect of the act involved was postponed to a future date, said: "All matters and clauses in the former act 'which are contrary to the provisions of this act' are repealed. This act passed in February, 1819. And the plaintiff's counsel contend that the repealing clause took effect immediately, so that the plaintiff might lawfully practice in the interval between February and July, and would not come within the provisions of either act. There is however nothing inconsistent or contradictory in allowing the first act to operate till July, 1819, as to the licenses to practitioners."

In *McArthur* v. *Franklin* (1865), 16 Ohio St. 193. the

court disposed of the question similarly presented by the following observations: "The point made is, that the new act took effect immediately on its passage, so as to repeal the section which it was designed to amend; but, that its operation for all other purposes was postponed to the first day of May following. The husband of the plaintiff died, it is said, between the 27th of March and the 1st of May. Hence, it is claimed that the plaintiff has not a right of dower, for the reason that there was no law in force giving dower at the date of her husband's death. The rule upon the question raised, is thus stated in Smith's commentaries on the construction of statutes: 'Where the provisions of a revising statute are to take effect at a future period, and the statute contains a clause repealing the former statute upon the same subject, the repealing clause does not take effect until the other provisions of the repealing act come into operation.' Smith's Com. on Stat. Const. §783, p. 902. We have no doubt this is the correct construction of the act now in question. The effect of the general statute prescribing when laws containing no special provision on the subject, shall go into operation, has the same effect upon the act in question, as if the latter had contained a provision prescribing the 1st of May as the time at which it was to take effect."

In *Leyner* v. *State* (1857), 8 Ind. 490, 492, it was said: "It is insisted that the repealing and saving clauses took effect upon the approval of the act in *February*, 1855. But this position is clearly untenable. It is true that the thirty-ninth section is in the present tense—that all acts are hereby repealed, and actions now pending are saved (Laws of 1855 pp. 222, 223); but this section must be taken in connection with the forty-second section, which expressly provides that the act shall take effect and be in force after the 12th of *June* next, Id. p. 223. The repealing and saving clauses, therefore, speak from

that date, and not from the date of the approval."

In *Grant* v. *City of Alpena* (1895), 107 Mich. 335, 65 N. W. 230, by the defendant's charter, as it was prior to the amendment of 1891, the common council was authorized to appoint a marshal, and to remove him at pleasure. May 20, 1891, plaintiff was appointed marshal for the ensuing year, at a salary of $1,000. A new common council went into office early in August, under the amended charter of 1891, approved July 2, 1891, and ordered to take immediate effect, and August 17 declared the office of marshal vacant, and appointed a new man to fill the place. The amended charter provided for a board of police commissioners, to be appointed on the nomination of the mayor after the annual election in 1892, the first Monday in April and before May 1. To this board when so appointed was committed the appointment of a marshal and the control and management of the police department of the city. By this amendment the power to appoint a marshal was taken away from the common council and lodged in this board. The effect was either to abolish the office of marshal during the interim from July 2 to some time after April 1, when the board should be appointed or to leave the office in the control of council until that time. The result of either holding would be to defeat the plaintiff's claim. A law or any single provision thereof cannot begin to speak until it takes effect. *Rice* v. *Ruddiman* (1862), 10 Mich. 125; *Price* v. *Hopkins* (1865), 13 Mich. 318. Had the act provided that it should go into effect at the election in April, 1892, clearly the old charter would have remained in force until then. The same rule applies to any provision of the act. The police department was left in the control of the council until transferred to the board of commissioners which could not be done until April, 1892.

In *State, ex rel.,* v. *Edwards* (1896), 136 Mo. 360, 38

S. W. 73, in discussing a law providing for certain tax assessments and which it was claimed was repealed by another statute, the court held the repealed statute was in force until the amendatory act took effect.

In *Schneider* v. *Hussey* (1881), 2 Idaho 8, 1 Pac. 343, it is held that the phrase, passage of an act, means when by law the act goes into effect. And that it will not be contended that one section of an act will take effect or be in force at any earlier date than the other sections unless the act itself shall so state. The court says: "The first section of the act of January 15, 1875, fixes the time when this act, among others, takes effect, which is July 1, 1875. It will not be contended that one section of an act will take effect or be in force at any earlier date than other sections unless the act itself shall so state. There is no clause in this act providing that this section shall take effect sooner than any other section of the same act. This section, therefore, and no clause of it, can take effect until the first day of July, 1875."

In *Ex parte Ah Pah* (1911), 34 Nev. 283, 119 Pac. 770, it was held that two acts passed on the same day, one providing that the act should not take effect until January 1, 1912, and the other fixing a date in 1911, the statute of 1912, did not supersede the statute of 1911 until January 1, 1912, the time fixed for its taking effect.

In *Board of Education of Ogden City* v. *Hunter* (1916), 48 Utah 373, 159 Pac. 1019, it is held that where a statute is made effective only from a future date but in terms repeals the former law upon the subject, the repealing clause becomes effective only at the time the statute goes into effect. Where a statute repeals all former laws within its purview, the intention is obvious, and is readily recognized to sweep away all existing laws upon the subjects with which the repealing act deals. 1 Sutherland, Stat. Const. §246. 1 Sutherland, Stat. Const. §175, says: "Where the provisions of a revising statute are

to take effect at a future period and the statute contains a clause repealing the former statute upon the same subject, the repealing clause will not take effect until the other provisions come into operation." In the same volume §280, it is further said: "Statutes speak from the time they take effect, and from that time they have posteriority. If passed to take effect at a future day, they are to be construed, as a general rule, as if passed on that day and ordered to take immediate effect."

Section 182, R. C. L. p. 932, states the rule as follows: "A repeal by implication, the same as any other repeal, does not take effect until the new statute goes into effect and becomes operative. So where an act does not go into operation until a future date, former statutes repealed thereby do not become repealed until such future date."

We conclude that no part of the act of 1925, was intended to be operative affirmatively until January 1, 1929. That date clearly relates to the pay for the speaker and the president as much as the pay of the members. Indeed, House Enrolled Act No. 1, in §6 thereof, recognizes that the provision for the pay of the speaker and the president of the senate in the act of 1925, is not operative before January 1, 1929, and so it is provided in said §6 that those officials, for acting as such "during the seventy-fifth General Assembly" shall each receive twelve ($12) dollars per day.

The judgment ought to be affirmed.

Myers, J., concurs.

### ON PETITION FOR REHEARING.

MARTIN, J.—Counsel for appellee, in his brief on petition for a rehearing, says: "The judgment of reversal exists solely because Martin, J., erroneously resolved his doubt in favor of the validity of the act" . . . "The rule applied by Martin, J., is proper when there is an

attempt to invoke the Constitution as against a public act enacted in the public interest, but it cannot properly apply where the public invokes the Constitution against such an act as the act of 1927 which serves only the private interests of public servants at the expense of the public treasury. Every rule has its exceptions and the instant case furnishes the exception."

The authorities cited to support this statement hold that "considerations of expediency and of *sound public policy* may be of determining influence in case of doubt as to the real meaning of a constitutional provision." 12 C. J. 703.

Appellee's argument cannot prevail. We know of no public policy that has been violated by the act of 1927 here involved. Appellee, regardless of the fact 7. that the reasonableness of the salary of $10 per day fixed by the legislature was not in issue and was not considered by the court, and regardless of the statement in his brief that "the reasonableness of the amount of compensation which the legislature may fix for its members can never be a question for this court," devotes a large portion of his brief to numerous and repeated declarations of the following tenor: "the great public interest in a protected treasury is now being sacrificed in favor of the strictly personal interests of public officials . . . the excess in the provision of $10 per day . . . is hostile to the public interest and . . . for their personal enrichment and . . . the direct pecuniary interests of the members."

The General Assembly is a co-ordinate branch of the state government, whose members ought not to be called upon to make too great a financial sacrifice in order that they may serve their state. Considering the present high cost of living, we do not believe it can be justly said that a salary of $10 per day for those officers who make our laws is "hostile to the public interest" or

sacrifices "the great public interest in a protected treasury." The Constitution provides that they shall be "compensated for their services" and it appears to us that "sound public policy" requires that this compensation shall be a reasonable one. A compensation which does not greatly exceed the personal expenses of a legislator during his attendance at the session, and which is probably insufficient to meet the living expense of his family at home during that time, is certainly not against the "public interest," or for "personal enrichment."

Appellee, in his petition for rehearing, urges that mandate is not the proper form of action here because "mandate only lies where there is a clear legal right and a clear legal duty." Section 1 of the act of 1927 clearly points out to the auditor this duty, and merely to perceive that someone might attack the law on constitutional grounds, is not sufficient cause for his refusing to perform this duty. Moreover, the question as to whether mandate was the proper form of action was not presented by the briefs on the original hearing, and, at the time of the oral argument, was expressly waived by counsel for both appellant and appellee.