THORLTON *v.* GUIRL DRAINAGE COMPANY ET AL.

[No. 23,018. Filed April 6, 1916.]

1. DRAINS.—*Statutes.*—*Constitutionality.*—Sections 23 and 24 of the drainage act of 1913 (Acts 1913 p. 433, §§8233x, 8233y Burns 1914), providing for the issue and sale of bonds to pay the cost of drainage improvement, and for the collection of assessments made against the land affected, do not, when considered with the other sections of the act, authorize the county commissioners to pledge the credit of the county to the payment of the bonds issued for the drain out of the general taxes, but contemplates their payment from the proceeds of the assessments on the lands benefited, and hence the act is not violative of §6, Art. 10, of the Constitution prohibiting the county from loaning its credit. pp. 639, 643.

2. CONSTITUTIONAL LAW.—*Statutes.*—*Presumption in Favor of Validity.*—Courts are reluctant to strike down an act of the legislature and will not do so unless it is clearly in violation of some provision of the State or Federal Constitution. p. 642.

3. CONSTITUTIONAL LAW.—*Statutes.*—*Construction in Favor of Constitutionality.*—If a statute is capable of two meanings, one of which is in conflict with the Constitution and the other is not, it is the duty of the court to adopt the latter meaning, and so uphold the statute. p. 643.

From Clay Circuit Court; *John M. Rawley*, Judge.

Action by Wallace Thorlton against the Guirl

Drainage Company and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*C. G. Schofield,* for appellant.
*Hutchison & Burns,* for appellees.

LAIRY, J.—Appellant brought this suit to enjoin appellees from proceeding under the act of the legislature, approved, March 10, 1913 (Acts 1913 p. 433, §8233b Burns 1914), to construct certain drain and levee improvements in Clay County. The separate demurrers of appellees to the complaint were sustained and this ruling of the court presents the only error relied on for reversal. Prior to the commencement of this suit a complaint was filed by one Bemis to enjoin further proceeding in reference to the same improvement contemplated in this case. A demurrer to the plaintiff's complaint in that case having been sustained and judgment rendered for defendants an appeal was taken to this court where the judgment was affirmed. *Bemis* v. *Guirl Drainage Co.* (1914), 182 Ind. 36, 105 N. E. 496. The allegations of the complaint as shown by the opinion in that case were similar to those of the complaint which was held insufficient by the trial court in this case; and many of the questions presented on this appeal were there decided adversely to appellant. From appellant's viewpoint the complaint is insufficient for the reason that the statute upon which the proceeding for the improvement is based, is in conflict with numerous constitutional provisions and is for that reason invalid. The court will not further discuss the constitutional questions considered and decided in the opinion in the case referred to but will dispose of one question not there presented.

Section 6 of article 10 of the Constitution of Indiana reads as follows: "No county shall subscribe

for stock in any incorporated company, unless the same be paid for at the time for such subscription, nor shall any county loan its credit to any incorporated company, nor borrow money for the purpose of taking stock in any such company; nor shall the general assembly ever, on behalf of the state, assume the debts of any county, city, town, or township, nor of any corporation whatever.'' Section 23 of the statute under consideration (§8233x Burns 1914, Acts 1913 p. 433) provides for the issue and sale of bonds to pay the cost of the improvement and §24 (§8233y Burns 1914, Acts 1913 p. 433) provides for the collection of the assessments made against the lands affected. Appellant contends that it was the purpose of the legislature as shown by the wording of §23, *supra*, to authorize the issue and sale of municipal bonds by which the credit of the county was pledged for the payment of the cost of the improvement and that §24, *supra*, as indicated by its wording, contemplated the collection of the assessments for the purpose of reimbursing the county for the money advanced. As so construed appellant asserts that these sections authorize the county to loan its credit in violation of §6 of article 10 of the State Constitution. If the two sections of the statute to which reference has been made were to be considered separate and apart from other portions of the act, the language would seem to accord with the meaning for which appellant contends; but it is the duty of the court to consider these sections in connection with other parts of the act for the purpose of arriving at the intent and purpose of the legislature. Section 12 of the act (Acts 1913 p. 433, §8233m Burns 1914) requires that plans and specifications for the proposed improvement shall be prepared and filed together with an esti-

mate of the cost of the work including the preliminary expense. Section 15 (Acts 1913 p. 433, §8233p Burns 1914) provided for the assessment of benefits and damages, while sections 16, 17 and 18 (Acts 1913 p. 433, §§8233q-8233s Burns 1914) make provisions for equalizing assessments after notice and hearing. Section 19 (Acts 1913 p. 433, §8233t Burns 1914) provides, "That if the whole amount of such assessments of benefits shall not be equal to the estimated cost of the proposed work, according to the estimate required by the twelfth section of this act, and the damages assessed, and ten per cent (10%) of the whole amount in addition thereto, then such assessment shall not be filed for record by such clerk, and the proposed work shall not be further prosecuted by said association, unless said deficiency shall be donated and paid into the treasury, or subscribed and secured to be paid on the call of the directors, in the same manner and installment as are provided for the payment of assessments of benefits." It thus appears that the general purpose of the act was to provide for the payment of the cost of the improvement by assessments against the lands, roads and railroads affected thereby, and that it was not the purpose to impose the cost of the improvement or any part of such cost on the county to be met by general taxation.

The power of counties to issue bonds which will create an indebtedness of the county is regulated by §5949 Burns 1914, Acts 1899 p. 343. "The county council shall have the exclusive power to authorize the borrowing of money for the county, but the total amount of county indebtedness shall not exceed an amount equalling two (2) per cent of the taxable property of such county, as the same may appear on the tax duplicate for the year in which such loan shall be effected. The ordinance authorizing such loan may

direct the issue of bonds or other county obligations, negotiable or otherwise, bearing interest at a rate not exceeding six per cent per annum, and running not to exceed twenty (20) years. It shall be lawful to provide that the bonds of any series may mature by installments payable annually, or otherwise, if deemed for the public interest. It shall be lawful to issue and sell bonds for any lawful corporate purpose, except that no bonds shall be issued or sold to pay for any current expenses of such county incurred after the passage of this act. * * * Whenever any bonds are authorized the ordinance shall state the purpose for which said bonds are issued, so that the record may show that such bonds are issued either for the purpose of paying any county indebtedness incurred before the passage of this act or for county expenses authorized by law other than current running expenses, or for the payment of bonds issued for said lawful purposes after the passage of this act." It is evidently the purpose of the county reform act of which the section thus quoted forms a part, to place all county indebtedness under the control of the county council. The act under consideration makes no reference to the county reform law and there is nothing in the act to indicate an intention that the bonds authorized thereby should constitute a municipal indebtedness of the county.

The only feature about the act which renders it at all uncertain or doubtful in its meaning is some language unfortunately employed in §§23 and 24, *supra*. Section 23, *supra*, provides that the county commissioners shall cause the bonds of the county to be issued for the amount required to complete the work in such county. The fact that the bonds are designated as "bonds of the county"

does not clearly indicate that county bonds to be paid by a general tax were to be issued, rather than assessment bonds to be paid from the proceeds of the special assessments for which provision is made in other parts of the act. The same language is used in other statutes to denote special assessment bonds. The statute with reference to free gravel roads designates the bonds to be issued thereunder as "bonds of the county". §§1701, 1725, 1723 Burns 1914, Acts 1903 p. 207, §§1437, 1435 R. S. 1881. The same may be said of the statutes on the subject of drainage and the construction of levees and dykes. §§6145, 8192, 8224 Burns 1914, Acts 1909 p. 431, Acts 1907 p. 404, §5, Acts 1905 p. 580. The language of §24, *supra*, by which it is provided that the county auditor shall place upon the tax duplicate each year, the annual amount due from each tract of land assessed as benefited, "*to reimburse the county for the money so advanced to construct such work*," is unfortunate; but when considered in connection with other provisions of the act, it can not be regarded as conclusive of the intention of the legislature in that respect. At most it can but render doubtful the intention, which otherwise would be perfectly clear. Courts are very reluctant 2. to strike down an act of the legislature, and they will do so only in cases which are free from doubt. Statutes are held in high regard by the courts, and they will be upheld unless they are clearly in violation of some provision of the State or Federal Constitution. *State, ex rel.* v. *Roby* (1895), 142 Ind. 168, 41 N. E. 145, 51 Am. St. 174, 33 L. R. A. 213; *Harriman* v. *Interstate Commerce Com.* (1908), 211 U. S. 407, 29 Sup. Ct. 115, 53 L. Ed. 253.

If a statute is capable of two meanings one of which would harmonize with the constitutions, the other of which would be in conflict therewith, it is

the imperative duty of the courts to adopt
3. that meaning which is in harmony with the
constitutions and so uphold the statute. *School Town of Andrews* v. *Heiney* (1912), 178 Ind. 1, 98 N. E. 628, 43 L. R. A. (N. S.) 1023, Ann. Cas. 1915 B 1136; 6 R. C. L. 78, §77. Boards of commissioners were not authorized by §23, *supra*,
1. of the act to pledge the credit of the county by
the issue of bonds payable from the proceeds of a general tax on the property of the county, but the bonds authorized are payable only out of the proceeds of the assessments made against the lands benefited by the improvement. The act is not open to the objection urged against it and the demurrer to the complaint was properly sustained. Judgment affirmed.

NOTE.—Reported in 112 N. E. 5. As to the rules for construing statutes, see 12 Am. St. 827. See, also, under (1) 11 Cyc 551; (2, 3) 8 Cyc 801.