THE BOARD OF EDUCATION OF THE CITY OF ROCHESTER, Plaintiff, *v.* CLARENCE D. VAN ZANDT and Others, Constituting the Board of Estimate and Apportionment of the City of Rochester, Defendants.

Supreme Court, Monroe County, June, 1922.*

**Constitutional law — limitation on amount to be raised by city by annual taxation — " city purposes " — term includes money raised for education — State Constitution, art. VIII, § 10.**

The term " city purposes " as used in section 10 of article VIII of the Constitution of the state of New York, limiting the amount that can be raised by a city by annual taxation, includes money raised for educational purposes, a state function, as well as those levied for purely local purposes.

Under section 473 of the Civil Practice Act and rules 210–214 of the Rules of Civil Practice a declaratory judgment may be had concerning an actual controversy involving the construction of a provision of the Constitution of the state.

ACTION for declaratory judgment defining the limitation of the amount to be raised by taxation under the State Constitution.

*Isaac Adler,* for plaintiff.

*Charles L. Pierce,* corporation counsel, for defendants.

RODENBECK, J. The question involved in this controversy is one of constitutional construction. The State Constitution prohibits cities, in addition to providing for the principal and interest of existing debt, from raising by taxation in any one year for " city purposes " amounts in excess of two per cent of the assessed valuation of the real and personal estate of the city. Art. VIII, § 10. The plaintiff, the board of education, seeks a construction limiting the term " city purposes " to those purely corporate or municipal as distinguished from those governmental or state, and the defendant, the board of estimate and apportionment, representing the city of Rochester, seeks a construction extending the term to all purposes, state and local, for which the city is authorized to levy taxes. In determining the question the court must apply the usual judicial processes and interpret the language of the Constitution in the light of modern conditions and the rules which

---

* Received too late for insertion in proper place.— [REPR.

experience has found most efficacious in ascertaining the meaning of statutes and constitutions.

The first test that should be applied is the meaning which is attached to the term in other parts of the same section. It occurs in one other place and there its meaning is quite apparent, particularly if the history of the enactment of the first sentence is considered. The evil sought to be remedied by the language of this sentence enacted in 1874 is well known. The framers of the provision intended to prohibit the use of public moneys for private purposes and so they enacted that no city should incur any indebtedness except for " city purposes." The word " city " as here used clearly means " public " as the plain intention was to prohibit the use of city moneys for private purposes such as theretofore prevailed. *People ex rel. Murphy* v. *Kelly,* 76 N. Y. 475; *Matter of Mayor, etc., of N. Y.,* 99 id. 569; *Matter of Niagara Falls & W. R. Co.,* 108 id. 375; *Sun Printing & Publishing Assn.* v. *Mayor,* 152 id. 257; *Bush* v. *Bd. Supervisors,* 159 id. 212; 11 C. J. 792. If such is the meaning of the term " city purposes " in the first sentence of the section, it will require clear language or an obvious intention to give it a different meaning in the last sentence. In the absence of a plain expression to the contrary it must be assumed that the framers of the last sentence knew of the meaning attached to the term " city purposes " in the first sentence and used it advisedly and with the same meaning in the final sentence which it had in the first sentence. To charge them with using this term in a meaning contrary to that which it was understood to have had for ten years in the earlier provision would be attributing to them a course at variance with that usually followed by men of the knowledge and experience of those delegated to frame constitutional amendments. It must be assumed that they knew the meaning of the term as already employed and that they would not knowingly introduce an element of construction and confusion by using it in a different sense in the subsequent amendment. The fact that " city purposes " in the first sentence put into the Constitution in 1874 had a well-known meaning for ten years down to 1884, when the last sentence was inserted, is not to be construed as indicating that the framers of the last sentence intended to use it in a different sense but rather that they considered the term as having a well-understood meaning and employed it accordingly. They knew that city indebtedness was limited to public purposes by the use of the term " city purposes " and it was quite natural that they should use the same expression in limiting the amount of the annual taxes. They knew that the Constitution forbade a city from becoming indebted except for a city, that is, a public

Supreme Court, June, 1922.        [Vol. 119

purpose, and they extended the prohibition to taxation except for a city, that is, a public purpose. They undoubtedly had the same thought in their minds in using the expression " city purposes " as did the framers of the first sentence, that is, to restrict the use of taxpayers' money to public as distinguished from private purposes. There is no evidence in the language of the section that any distinction was sought to be made between local or corporate use and general or state purposes.

The adoption in the final sentence of the meaning of the phrase " city purposes " as used in the first sentence is supported by the practical construction that has been put upon it in its actual application. For nearly forty years the cities of the state have construed the section to include taxes levied for educational as well as for other state functions. Education is a state function but so is fire, police and health protection and public charity. No question has been heretofore raised as to the inclusion of taxes for any of those purposes in the two per cent limitation. On the contrary, it has been assumed for nearly four decades by those having the power to levy taxes in cities that " city purposes " as used in the section includes all taxes which the city may legally impose. Although this section was amended by the new Constitution of 1894 and again in 1899, 1905, 1909 and 1917, the first and last sentences containing the words " city purposes " remained unaltered. If there had been any misunderstanding of the meaning of those terms or any contradiction, some amendment would have been proposed. There is nothing that the framers of this section overlooked except that the legislature might increase the annual expenses of a city in a particular department, such as education, by increasing the salary of teachers or otherwise, to such an extent as to seriously embarrass a city in raising sufficient funds to carry on other necessary work of the city. But this oversight does not justify the court, in relieving the situation created by the legislature, by restricting the language of the Constitution from its obvious long-recognized meaning and exempting from its language expenditures which have long been considered within its scope. This practical construction is entitled to great weight and will not be disregarded, unless it clearly appears that it is erroneous, merely to meet a critical situation in municipal financing due to burdens cast upon cities by the legislature in raising salaries or imposing other burdens without due regard to the limitations of the Constitution.

The evils that would result from the construction contended for by the plaintiff are quite apparent. If the argument which is advanced by the plaintiff is sound, it applies equally as forcibly

to the taxes levied for other agencies performing state functions such as police, fire, health and charity departments. If the restrictions were removed to the expenditures by cities for all state purposes, it would render the constitutional limitation a useless formality for in the case of the plaintiff alone the appropriation deemed necessary for educational purposes in 1921 exceeds the total amount required for all other departments of the city. It would also raise a question with reference to the validity of the indebtedness heretofore incurred by cities not only for school but for police, fire, health and charitable purposes which could only be solved by a construction of the words " city purposes " in the first sentence at variance with the construction contended for by the plaintiff for similar language in the last sentence. *State v. Southern Ry. Co.,* 115 Ala. 250.

The courts are not vested with legislative power. Their functions are judicial. In the interpretation of statutes they are not permitted to make new laws but to assign a meaning to existing laws. To do otherwise when the meaning is clear and has been acquiesced in for a long period is itself a violation of fundamental law. It is more important that the courts should keep within the orbit prescribed by the Constitution than that the statutes should be strained to help out an embarrassing public financial condition. These observations are doubly true when the Constitution rather than a statute is under construction. A Constitution would deserve little respect that could be stretched and relaxed like a rubber band as occasion might require. There is no reason why the usual rules of construction should not be applied to this case and the usual remedy, if necessary, by amendment followed and there is no exigency which requires the court to give a meaning to words contrary to those which they have had both in the legal and lay minds for so many years.

The constitutionality of such a proceeding as this one for a declaratory judgment where an actual controversy exists involving only a question of law and the power of the Supreme Court to authorize such a procedure in such a case is not open to question. Civil Practice Act, § 473; Rules of Civil Practice, 210–214; Report Bd. of Statutory Consol. 1915, vol. 1, § 57, n. 54; English Practice, Order LIVA, rules 1, 2, 3, 4; Order LV, rule 3; N. Y. State Bar Assn. Rep. 1918, 242; *State ex rel. Hopkins v. Grove,* 109 Kans. 619; Parsons' Practice Manual, 1921, 186, § 473, citations.

The complaint is dismissed and judgment is granted as prayed for by the defendants.

Judgment accordingly.