ZOERCHER ET AL. *v.* AGLER ET AL.*

[No. 25,554.   Filed July 2, 1930.   Rehearing denied October 17, 1930.]

*Reported in 70 A. L. R. 1232.

James M. Ogden and Arthur L. Gilliom, Attorney-Generals, Louis B. Ewbank, Samuel Dowden and Dale F. Stansbury, for appellants.

G. A. Farabaugh, Theophilus J. Moll, Matson, Carter, Ross & McCord and Shively, Gilmer & Arnold, for appellees.

MARTIN, J.—Appellees brought this action under ch. 81, Acts 1927, §§680.1-680.16 Burns Supp. 1929 (the Uniform Declaratory Judgments Act), as taxpayers, freeholders and citizens of the city of South Bend, against the State Board of Tax Commissioners, the city of South Bend, the auditor of St. Joseph County, and against certain persons (more than 10) on whose petition the auditor had certified the city tax levy for 1928 to the tax board in pursuance of ch. 95, Acts 1927, §14239 Burns Supp. 1929. The complaint alleged that the proper city and county authorities had fixed the rate of tax assessment for the year 1928 at 73 cents per $100 worth of assessed property (a supplemental complaint being filed after the tax board had held a hearing in South Bend and had reduced the levy from 73 cents to 72 cents per $100); and that the tax board was proceeding to act (and had acted) under the supposed authority of ch. 59, Acts 1919 (particularly under §§169, 171, 177, 200, 201 and 202), and of laws amendatory thereof, particularly ch. 222, Acts 1921, and ch. 95, Acts 1927, (§14209 et seq. Burns 1926, §14239 Burns Supp. 1929), but that such laws and each of them are unconstitutional and void in that they take from the city officers authority to administer the local governmental affairs of the city and assume to constitute the tax board a body with powers to "certify its action with respect (of any levy made by the city) to the auditor of the county . . . and the action of the State Board of Tax Commissioners with respect to said tax levies and such parts thereof as may

have been in question shall be final and conclusive." The complaint further alleges that an actual controversy exists between the plaintiffs (appellees), in their own behalf and in behalf of those whom they represent, with regard to their rights as citizens, taxpayers and voters, they believing that the tax-board law is unconstitutional, and the defendants (including appellant tax board) believing that such law and the action taken thereunder are valid, and that it is necessary, in order to settle the controverted claims and the rights of the parties, that the court declare the rights, status and legal relations existing between the parties, and prays that the court declare the said acts to be unconstitutional, and the said action of the tax board to be null and void.

The issues were closed by general denials. The cause was tried by the court, the facts being stipulated. At appellant's request, a special finding of facts was made and conclusions of law stated thereon. The special finding shows that in August, 1927, the city, by its proper officers, pursuant to statute, formulated a proposed budget of anticipated expenses for the year 1928. The notice of the time of hearing on the budget (September 2, 1927), a copy of the same in full, a comparative statement of taxes collected in 1925, 1926 and 1927, and to be collected in 1928, together with a statement of the right of taxpayers to appeal to the tax board, are set out. It is then shown that a public hearing was had on the budget at the time fixed in the notice, at which time the petitioners (who were parties defendant at the trial but are not parties on appeal) appeared and remonstrated against the adoption of the budget and the levy of taxes thereby fixed; that these remonstrances were overruled, an ordinance (which is set out in full) was adopted (September 9, 1927) appropriating for the expenses of the municipal city government of South Bend the amounts contained in the budget (itemized with greater

minuteness than the budget), and another ordinance (which is set out in full) was adopted (September 9, 1927) fixing the tax levy for the year 1927 for each of the city's nine funds, totaling 73 cents per $100 of assessed valuation of property (and fixing the amount of a poll tax), and that a certified copy of the last named ordinance was delivered to the county auditor as the certificate of the rate of the city levy.

It is then found that the petitioners, pursuant to the statute, on September 26, 1927, filed in the auditor's office their petition (Exhibit A of the complaint), which was two days later filed with the tax board; that said board fixed a time and place of hearing (October 18, 1927, in the office of the auditor of St. Joseph County), gave due notice thereof, held such hearing, and on October 28, 1927, made an order which is set out at length. This order of the tax board found "that practically the only objection to the budget . . . was the increase in the salaries of the city officials, policemen and firemen . . . pursuant to ch. 23, Acts 1927 (see §§10297, 10299.2 Burns Supp. 1929) . . . which, according to the opinion of the Attorney General, is one over which this board has no control." (After indulging in some gratuitous criticism of the city officers for making the increases, the order again stated "but it is a matter beyond the control of this board.") The order then found that, "in fixing the levies, the city council based the same on a valuation of $188,000,000 and the board now finds that the correct valuation is $191,000,000 and that such increase in valuation will enable a reduction of one cent on the total city levy without reducing any of the appropriations made by the city council." The order of the tax board thereupon slightly reduced the rate of the taxes for the year 1927, payable in 1928, for each of the city's nine funds, the total rate being 72 cents, amounting to a reduction of one cent per $100 assessed valuation.

The court then found that the county auditor proceeded to disregard the rate and levy of 73 cents and to spread upon the tax duplicates the 72-cent rate; that the city of South Bend and its officials are doing nothing to resist the order entered by the tax board; that, at the time of the passage of the two ordinances, the city council had before it tax valuations based upon an estimate in the sum of $188,000,000; and that, at the time of the hearing before the tax board, the correct amount was certified by the county auditor as $190,599,290. The court found that the plaintiffs (appellees) and that the petitioners subscribing to Exhibit 1 (defendants but not appellants) were all resident freeholders, voters and taxpayers of the city of South Bend, and that the defendants, who are members of the State Board of Tax Commissioners, were not residents of South Bend.

The 12th and last paragraph of the special finding of facts sets out that by virtue of ch. 222, Acts 1921, and ch. 95, Acts 1927, doubt and uncertainty have arisen concerning the legal status, force and effect of the ordinance fixing the tax rate and its certification to the auditor as to whether it is subject to revision and amendment by the tax board or whether it is binding upon the auditor without regard to the action of the tax board, and that, by virtue of such uncertainty and indefiniteness of said status and right in respect thereto, an actual substantial controversy existed between the parties as to the constitutionality of said acts of the General Assembly in so far as they assume to confer power upon the tax board to review, revise and amend the tax levy.

The court's conclusions of law were: (1) that so much of §200, ch. 59, Acts 1919, as amended by §3, ch. 49, Acts 1920, and as further amended by ch. 222, Acts 1921, §14239 Burns 1926, and as further amended by ch. 95, Acts 1927, §14239 Burns Supp. 1929, as assumes to confer upon the State Board of Tax Commissioners of

Indiana the power, authority and duty to revise, review and decrease tax levies fixed by the city council of the city of South Bend, is violative of the Constitution and void; (2) that the action of the state tax board in making the order of October 28, 1927, is a nullity; and (3) that the correct and legal levy which it is the duty of the county auditor to place upon the tax duplicates is the rate and levy certified to him by the city council.

Upon these conclusions of law, the court rendered judgment, ordering, adjudging and decreeing that so much of ch. 222, Acts 1921 and the amendment thereof contained in ch. 95, Acts 1927, as assumes to confer power on the tax board to affirm or decrease the tax levy here involved is unconstitutional and void; that the rate and levy fixed by ordinance should prevail regardless of the order of the tax board. The court further ordered that the county auditor and his successor in office are in duty bound to certify to the county treasurer the rate and levy so certified to him by the common council of the city.

The errors assigned and relied on are that the court erred in its several conclusions of law and in overruling a motion for a new trial, wherein it was alleged that the decision of the court is contrary to law and not sustained by sufficient evidence.

The ultimate questions involved in this appeal are: (1) is there an actual controversy between the parties relative to some right or status which the plaintiffs (appellees) are entitled to have declared, and are the appellees real parties in interest and entitled to maintain the action under the Declaratory Judgments Act; and (2) if so, then is there any constitutional objection to the law which provides for review of municipal tax levies by the State Board of Tax Commissioners?

Appellants contend that the first question must be answered in the negative, because, they say, one cannot

question the constitutionality of a statute unless he shows he has sustained some injury to his personal or property rights through the enforcement of such statute, that this rule is not changed by the Declaratory Judgments Law and that no such injury has been shown in this proceeding. It is true, as contended by appellants, that every action must be prosecuted in the name of the real party in interest, §258 Burns 1926; that nobody can maintain an action unless he has an interest in the subject-matter of the controversy, *Shoemaker, Auditor,* v. *Board, etc.* (1871), 36 Ind. 175; *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 98 N. E. 177; *Thompson* v. *Turner* (1909), 173 Ind. 593, 89 N. E. 314, Ann. Cas. 1912A 740; and that a member of the public cannot sue in his own name on a cause of action in favor of the municipality in which he lives, *State, ex rel.,* v. *Holt* (1904), 163 Ind. 198, 71 N. E. 653. It is also true under the Uniform Declaratory Judgments Acts (now in effect in more than 20 states, III Ind. Law Jour. 353) that the person bringing the action must have a substantial present interest in the relief sought, such as there must exist not merely a theoretical question or controversy but a real or actual controversy, or at least the ripening seeds of such a controversy, and that a question has arisen affecting such right which ought to be decided in order to safeguard such right.[1] *Miller* v.

---

[1]While declaratory judgments acts should be liberally interpreted, *Tennessee Eastern Electric Co.* v. *Hannah* (1928), 157 Tenn. 582, 12 S. W. (2d) 372, an examination of the recent cases shows that in a large number of them the courts are compelled to refuse to determine controversies which are not real. Moot or theoretical questions cannot be litigated under such acts, *Kelly* v. *Jackson* (1925), 206 Ky. 815, 268 S. W. 539; *Miller* v. *Miller, supra; Garden City News* v. *Hurst* (1929), 129 Kans. 365, 282 Pac. 720; nor can actions be brought merely to secure free advice where there is no present existing controversy, *Post* v. *Metropolitan Casualty Ins. Co.* (1929), 227 App. Div. 156, 237 N. Y. Supp. 64; *Dietz* v. *Zimmer* (1929), 231 Ky. 546, 21 S. W. (2d) 999.

The rule stated in the text has been the uniform rule since the beginning of legislation upon the subject of declaratory judgments. See: under the action of "declarator" under the Scotch law; *Gifford* v.

*Miller* (1923), 149 Tenn. 463, 261 S. W. 965; *Goetz* v. *Smith* (1925), 152 Tenn. 454, 278 S. W. 417; *Kariher's Petition* (1925), 284 Pa. St. 455, 131 Atl. 265; *Cryan's Estate* (1930), 301 Pa. St. 386, 152 Atl. 675; *Board of Education* v. *VanZandt* (1922), 119 Misc. Rep. 124, 195 N. Y. Supp. 297, affirmed 234 N. Y. 644, 138 N. E. 481; notes, 12 A. L. R. 67, 19 A. L R. 1127, 50 A. L. R. 45, 68 A. L. R. 110, 71 A. L. R. 1426. The rule contended for by appellants that the plaintiff must show that he has sustained some injury to his personal or property rights, has been applied in the case of one who brings an action to enforce his private rights; but such a rule does not serve to prevent the bringing of an action which involves the establishment of public rights. See *Hamilton, Auditor,* v. *State, ex rel.* (1852), 3 Ind. 452. In the case at bar, the appellees are suing for a determination or establishment of public rights, and, at the same time, it is apparent that, as taxpayers of South Bend, their personal and property rights are also involved and will be injured if a tax is illegally levied. There is an actual controversy here relative to some right and status of appellees, and they are entitled to maintain this action.

Coming to the objections urged against the validity of the tax law, we find that appellees contend that §200 thereof, as amended by ch. 95, Acts 1927, is in conflict with the following provisions of the State Constitution:

*Trail* (1829), 7 Shaw & Dunlop (Scot.) 854; *Earl of Galloway* v. *Lord Garlies* (1838), 16 St. Sess. Cas. (Scot.) 1212; under like provision of statutes and rules of court in England; *Hampton* v. *Holman* (1877), Law Reports (5 Ch. Div. Eng.) 183; *Guaranty Trust Co.* v. *Hannay & Co.* (1915), 2 K. B. (Eng.) 536, 113 Law Times 98, 12 A. L. R. 1, note 28 Yale L. J. (1918), 112; and in Germany §231 Code Civ. Proc. 1877 (§256 Rev. Code 1898), discussed in 28 Yale L. J. 16; and under declaratory judgment acts which preceded the present uniform declaratory judgment acts; *Patterson's Exrs.* v. *Patterson* (1926), 144 Va. 113, 131 S. E. 217; *Blakeslee* v. *Wilson* (1923), 190 Cal. 479, 213 Pac. 495; *State, ex rel.,* v. *Grove* (1921), 109 Kans. 619, 201 Pac. 82, 19 A. L. R. 1116; *West* v. *City of Wichita* (1925), 118 Kans. 265, 234 Pac. 978; *Kelly* v. *Jackson* (1925), *supra; Braman* v. *Babcock* (1923), 98 Conn. 549, 120 Atl. 150; *Tanner* v. *Boynton Lumber Co.* (1925), 98 N. J. Eq. 85, 129 Atl. 617.

(1) with Art. 1 of the Bill of Rights, §53 Burns 1926, declaring that all power is inherent in the people and that the said acts deprive the citizenry of the several municipalities of the state of the right to govern their local affairs; (2) with §1, Art. 3, Constitution, §103 Burns 1926, which requires that the powers of government shall be divided into three separate departments, no one of which shall exercise the functions of another, and that said acts delegate to the tax board, which is an administrative or executive body, legislative power to supervise, amend and repeal legislative acts of the several municipalities; (3) with §19, Art. 4, Constitution, §122 Burns 1926, which requires the subject of an act to be expressed or embraced in its title, because its title, "An act Concerning Taxation," does not cover the legislative powers and duties granted to the tax board over the local affairs of municipal corporations; (4) with §6, Art. 6, Constitution, §163 Burns 1926, providing that all county, township and town officers shall reside within their respective units and shall keep their offices therein, in that the members of the tax board are not residents of South Bend and do not keep their office therein; (5) with "the principle of local self-government reserved to inhabitants of municipalities recognized by and surviving the adoption of the Constitution," because, by the said acts, the right of local self-government in cities and towns will be surrendered to the tax board by vesting in them the power to prohibit the raising of public revenues for the purpose of carrying on such local self-government.

The section of the statute thus alleged to be in conflict with so many provisions of the Constitution (§14239 Burns Supp. 1929) is quite lengthy and will not be set out in full. It provides that tax levies and rates shall be established by the proper officers of municipal corporations after the formulation and publication by them of a budget showing in detail the money proposed to be ex-

pended during the succeeding year, the valuation of all taxable property within the jurisdiction and the rate of taxation it is proposed to establish, and after a public hearing thereon is had. The portion of the act here attacked is as follows:

"Ten or more taxpayers in any such municipal corporation, other than those who pay poll tax only, and who are affected by any such levy and any such rate and who may feel aggrieved with any such tax levy or any item thereof, may file a petition with the county auditor of the county in which such municipal corporation is located, not later than the fourth Monday of September, setting forth, in such form and detail as the state board of tax commissioners may prescribe and require, their objections to said tax levy or any item or any rate thereof, as the case may be. Upon the filing of any such petition, such county auditor shall immediately certify a copy of said petition, with such other information as may be necessary to present the questions involved, to the state board of tax commissioners, who shall have the power to affirm or decrease said total tax levy or any item thereof of any such municipal corporation, after a hearing as hereinafter required. The state board of tax commissioners shall, within a reasonable time, fix a date for a hearing on said petition, which shall be held in the county in which such municipal corporation is located, and notice of such hearing shall be given to the executive officer of the taxing unit and to the first ten taxpayers whose names appear upon such petition, by a letter signed by the secretary or any member of said state board of tax commissioners and sent in the United States mail with full prepaid postage, addressed to said officer and to said taxpayers at their usual place of residence, at least five days before the date fixed for such hearing. After a hearing upon such petition, the state board of tax commissioners shall thereupon certify its action with respect thereto to the auditor of the county, who shall thereupon certify such action to the taxing unit or units interested therein, and the

action of the state board of tax commissioners with respect to said tax levies and such parts thereof as may have been in question shall be final and conclusive."

The title of the general tax law, Acts 1919, ch. 59, which was amended by Acts 1927, ch. 95, is "An Act Concerning Taxation." The appellees say—supporting (3) above—that the power given to the tax board by ch. 95, Acts 1927, to approve or reduce the rate of taxation, results in the board having the right to control the amount and channels of municipal expenditure under the various items of its budget, which right is not mentioned in the title. We do not believe that appellees' statement is accurate regarding the result of the operation of this law, although necessarily there is a relationship between the functions of raising money and of spending it. The challenged provisions deal clearly with the subject of taxation alone, and we cannot hold that any subject is embraced in this section of the act which is not expressed in the title. See *Van Hess* v. *Board, etc.* (1921), 190 Ind. 347, 354, 129 N. E. 305, *State, ex rel.,* v. *Leonard, Auditor* (1926), 198 Ind. 356, 153 N. E. 777.

Appellees' contentions (numbered 1, 4 and 5 above) are each to the effect that this law violates the principle of local self-government. It is unnecessary here to enter upon a discussion of the existence of "the right of local self-government" in cities, or to determine just what such phrase includes. It cannot include the right of taxation, because that, by §1, Art. 10, Constitution, §200 Burns 1926, is vested in the General Assembly. The power of taxation is in the State, which occupies the position of universal trustee for all its municipal subdivisions. Cities get their authority to levy taxes only from a grant thereof by the state Legis-

lature. *Prudential Casualty Co.* v. *State* (1924), 194 Ind. 542, 143 N. E. 631; Cooley, Taxation (4th) §125. The power and authority conferred by Acts 1927, ch. 95, upon the State Board of Tax Commissioners to approve or reduce the amount of tax levies is not, ▆▆▆ as contended by appellees in (2) above, in contravention of §1, Art. III, Constitution, (§103 Burns 1926) separating the powers of government into the legislative, executive and judicial branches or of Art. 4 (vesting the legislative authority of the state in the General Assembly). The General Assembly may not delegate its legislative authority, except to municipal corporations, I Cooley, Taxation (2d) §75. In *School City of Marion* v. *Forrest* (1906), 168 Ind. 94, 97, 78 N. E. 187, it was said: "there can be no delegation of that authority [the power to tax] except to the extent that our form of government, in which local powers have been decentralized, makes it necessary that taxes should be levied, under legislative authority, by the various municipal bodies within the state, for the purpose of carrying out the ends for which such municipalities are organized," and in *Wright* v. *House* (1919), 188 Ind. 247, 121 N. E. 433, it was said: "The legislature may . . . empower any of the governmental subdivisions of the state to levy and collect taxes for similar purposes in the exercise of their delegated governmental powers." The Legislature has granted to cities the power of taxation and has enacted many laws regulating taxation. These grants are naturally subject to revocation, modification and control by the Legislature. *Williamson* v. *New Jersey* (1889), 130 U. S. 189, 196, 197, 9 Sup. Ct. 453, 32 L. Ed. 915; *State, ex rel.,* v. *Moenter* (1918), 99 Ohio St. 110, 124 N. E. 70; I Cooley, Taxation (4th) §84; 5 McQuillen, Municipal Corporations (3rd) §§2533, 2565. The Legislature has delegated the power to make levies to the governing bodies of the municipalities and

has established the State Board of Tax Commissioners as a reviewing body, to serve as a check upon the local municipal authorities, giving such board power to affirm or decrease levies in order to keep them within the limits which it has prescribed. There is no constitutional objection to the Legislature thus providing for the carrying out and enforcing of its expressly enacted will. It frequently has been held that the exercise by an administrative board of delegated ministerial powers, such as the power to equalize taxes as between counties (which is a power given by another section of the act to this board), is not the exercise of a legislative power. *Leser* v. *Lowenstein* (1916), 129 Md. 244, 98 Atl. 712; *Foster* v. *Rowe* (1906), 128 Wis. 326, 107 N. W. 635, 8 Ann. Cas. 595; *State, ex rel.,* v. *Cooper* (1917), 97 Ohio St. 86, 119 N. E. 253; Cooley, Taxation (4th) §75, 78. The power which the board here exercised was simply to make a mathematical computation from the figures before it and determine therefrom as a matter of fact that the tax levy fixed by the city would raise more money than was needed to provide the sums set out in the budget, and that the rate of assessment must be reduced from 73 cents to 72 cents in order to keep it within the provisions of the law. Clearly the exercise of such power was proper, and it was not a legislative act.

The presumption is that the law is constitutional and valid and that the authority conferred by it upon the tax board to affirm and decrease levies is authority to take such action as will make the levy conform to the law, and that it is not an invalid grant of prohibited legislative power to the board. It would be useless, in deciding the issues here involved, to speculate upon whether some action which the tax board might take in some other case, under the section of the law here involved, would be a legislative act or would be invalid. In *Blue* v. *Beach* (1900), 155 Ind.

121, 132, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. 195, it was said that the constitutional inhibition against the delegation of legislative authority "cannot properly be extended so as to prevent the grant of legislative authority, to some administrative board or other tribunal, to adopt rules, by-laws, or ordinances for the government of or to carry out a particular purpose," and that "It cannot be said that every grant of power to executive or administrative boards or officials, involving the exercise of discretion and judgment, must be considered a delegation of legislative authority."

This court has heretofore considered this section of the tax law as effective and valid, and has held that a complaint was good as against a demurrer, which sought by mandate to compel the board to determine under its rules whether "the amount to be collected on the levies adopted by the tax levying officers is more than government economically administered warrants." *State Board, etc.,* v. *State, ex rel.* (1926), 198 Ind. 343, 153 N. E. 404, 576.

It has been held repeatedly, in cases arising under §201 of this act (the section following the one under consideration here), that the Legislature properly and without violating any provision of the Constitution granted to the State Board of Tax Commissioners the power to exercise supervision over the issuance of bonds or other evidence of indebtedness by municipal corporations (which indebtedness must be paid from funds raised by taxation). *Van Hess* v. *Board, etc., supra; O'Connor* v. *Board, etc.* (1924), 194 Ind. 386, 142 N. E. 858; *State, ex rel.,* v. *Evans, Treas.* (1926), 197 Ind. 656, 150 N. E. 788; *State, ex rel.,* v. *Leonard, supra.*

There is some analogy between the grants of power to the State Tax Board and to the Public Service Commission. The powers of that commission to regulate the equipment of railroads, *Hill* v. *Chicago, etc., R. Co.* (1919),

188 Ind. 130, 122 N. E. 321, and to regulate utility rates, *Winfield* v. *Public Service Commission* (1911), 187 Ind. 53, 118 N. E. 531; *State, ex rel.*, v. *Lewis* (1918), 187 Ind. 564, 120 N. E. 129, have been held not to be unauthorized delegations of legislative power. See, also, *Minneapolis, etc., R. Co.* v. *Railroad Commission* (1908), 136 Wis. 146, 116 N. W. 905, 17 L. R. A. (N. S.) 821.

The judgment is reversed, with directions to the trial court to restate its conclusions of law in accordance herewith.

Willoughby, C. J., concurs in the reversal of the judgment only.

ON PETITION FOR REHEARING.

MARTIN, J.—Appellees insist that the court was under a misapprehension of fact when it made the statement (see opinion, p. 227) that the power here exercised by the State Board of Tax Commissioners was simply to make a mathematical computation from the figures before it and thus determine that the tax rate should be 72 cents per hundred dollars, instead of 73 cents. To sustain their contention, appellees present tabulations showing that the rates fixed by the tax board (for the nine separate city funds) produced, in some instances slightly more, and in other instances slightly less, than the budgeted amounts. Appellee's figures are erroneously based on a total valuation of $190,509,290, instead of $190,599,290 which is shown by the record to have been the correct amount certified by the county auditor (Record p. 37.) Allowing for the correction of this error, the difference between the budgeted amounts and the taxes obtained under the rate fixed by the tax board is so small as to be negligible. Under the rate (73 cents) fixed by the city council, based upon a valuation of $188,000,000.00, the sum of $1,372,420.00, the amount of the budget, would have been raised. Under the rate

(72 cents) fixed by the tax board, based upon the valuation which it found to be correct, viz., $191,000,000, the sum of $1,375,200 would have been raised, an amount in excess of the budget. The lower court found, however, that the correct valuation was $190,599,200, and the 73 cents rate on this valuation produced $1,372,314.88 This amount is more than 99.99 per cent of the amount of the budget, and the court was not under a misapprehension of fact when it made the statement above referred to.

Appellees also say that "this court has so construed the statute under assault as to render it perfectly constitutional and within the power of the legislature to enact," but that they deny "the propriety of such a construction" because it "would be doing violence to the legislative intent . . . and . . . tantamount to an amendment by the judiciary." It is the duty of this court to reconcile legislative acts with the Constitution and to place such construction (provided such construction is not unreasonable) upon statutes as will render them in harmony, rather than in conflict, with the Constitution. *Crittenberger, Auditor,* v. *State, etc., Trust Co.* (1920), 189 Ind. 411, at p. 425, 127 N. E. 552; *State, ex rel.,* v. *Bowman, Auditor* (1927), 199 Ind. 436, at pp. 451-453, 156 N. E. 394; *Thorlton* v. *Guirl Drainage Co.* (1916), 184 Ind. 637, 112 N. E. 5. Appellees have failed to show that an unreasonable construction has been placed upon the law or that violence has been done to any expressed legislative intent by the decision of this case.

Petition for rehearing denied.