**Robert E. SCHLOSS, individually and as representative of a class, Appellant (Plaintiff Below),**

**v.**

**CITY OF INDIANAPOLIS, Appellee (Defendant Below).**

No. 41A04–8801–CV–13.

Court of Appeals of Indiana, Fourth District.

Oct. 4, 1988.
Rehearing Denied Dec. 1, 1988.

Henry J. Price, Jerry A. Garau, Price & DeLaney, P.C., Indianapolis, for appellant.

James B. Burroughs, City–County Legal Div., Indianapolis, for appellee.

CONOVER, Presiding Judge.

Plaintiff–Appellant Robert E. Schloss (Schloss) appeals a circuit court order granting a motion to dismiss his complaint for declaratory, injunctive, and monetary relief made by Defendant–Appellee City of Indianapolis (City).

We affirm.

Schloss asks this court to decide three issues of law. Rephrased, they are:

1. whether he has standing to assert and pursue the claims;

2. whether IND. CODE 36–1–3–8(5) as applied to cable franchise fees was preempted by the Cable Communications Policy Act of 1984, Public Law 98–549, 98

Stat. 2779, codified at 47 U.S.C. §§ 521–559; and

3. whether section 8½–80(A) of the Municipal Code of Indianapolis is contrary to IND. CODE 36–1–3–8(5).

Schloss filed a two count complaint against the City. Count I asserted Schloss is a resident of the City and receives cable (television) services authorized under chapter 8½ of the municipal code. It further asserted the City's grant of cable franchises includes a requirement the franchisee pay a franchise fee of 3% of its yearly gross revenue to the City which it then passed on to subscribers. Schloss also alleged the franchise fee exceeded a limitation imposed by IND. CODE 36–1–3–8(5).[1] Schloss claimed he was injured thereby and prayed for declaratory and injunctive relief. He also sought attorney's fees and costs. (R. 5–7).

In Count II Schloss asked the court to certify the case as a class action under Ind. Rules of Procedure, Trial Rule 23. Count II prayed for declaratory and injunctive relief, compensatory damages for each member of the class, and for costs and attorneys fees under Ind. Rules of Procedure, Trial Rule 23(D). (R. 7–9).

The City's answer admitted it granted cable franchises and imposed the 3% fee. The City asserted it was without knowledge or belief about whether the fee was passed to subscribers, but did not deny the allegation. The City asserted IND. CODE 36–1–3–8(5) was not applicable, denied the 3% fee was contrary to law, and denied Schloss was injured by imposition of the fee. (R. 10–11). The answer opposed class certification. (R. 11–12).

The City moved to dismiss the complaint. It asserted Schloss and the purported class lacked standing to prosecute the cause and therefore the court lacked jurisdiction. (R. 14–21). Schloss argued to the contrary. (R. 23–27). Only memoranda were submitted in support of and in opposition to the motion to dismiss.

Later, for purposes of class certification, the parties stipulated the facts. (R. 30–33). Included is a stipulation the 3% franchise fee is passed to and paid by customers and the fee is included in the costs of all goods and services sold by the cable companies. (Stipulation 13, R. 32).

Schloss moved for partial summary judgment claiming Municipal Code § 8½–80(A) is "illegal". (R. 35–36). He supported his summary judgment motion with only a memorandum. (R. 38–42). The City did not file a response nor did the court rule on the summary judgment motion.

The day after Schloss moved for partial summary judgment the court entered an order granting the City's motion to dismiss Schloss's complaint with prejudice. (R. 44). The court found 47 U.S.C., not IND. CODE 36–1–3–8(5), is the controlling legislation; 47 U.S.C. does not require reimbursement of subscribers if the franchisee is reimbursed for excess franchise fees. Therefore, the court concluded, Schloss lacked standing to bring the suit and the court lacked jurisdiction. We note these are conclusions of law.

The court denied Schloss's timely filed motion to correct errors. (R. 69–70) He appeals.

The issues presented are issues of law. *Cf. Marsym Development Corp. v. Winchester Economic Development Commission* (1983), Ind.App., 447 N.E.2d 1138, 1142 (standing and statutory construction are interrelated legal issues). When reviewing allegations a trial court misapplied the law our task is to apply the law to the undisputed facts. *Babcock v. Babcock* (1986), Ind.App., 498 N.E.2d 986, *trans. denied*. We determine whether the court erred in its application of the law. *Indiana and Michigan Electric Co. v. Terre Haute Industries, Inc.* (1984), Ind.App., 467 N.E.2d 37, 42, n. 2.

As noted, the parties stipulated certain facts were accurate. The City refused to

---

1. 36–1–3–8. Powers specifically prohibited.—A unit does not have the following:

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

(5) The power to impose a license fee greater than that reasonably related to the administrative cost of exercising a regulatory power.

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

stipulate the facts were relevant. (R. 32). Relevance is a legal determination to be made by the court. Generally discussed in the context of evidence, relevance is simply the logical tendency of evidence to prove material facts. E.g. *Engle v. State* (1987), Ind., 506 N.E.2d 3, 5; *Mers v. State* (1986), Ind., 496 N.E.2d 75, 80; and *Jochem v. Kerstiens* (1986), Ind.App., 498 N.E.2d 1241, 1244. We are not called upon to determine whether the court erred by admitting evidence. The allegations of the complaint, admissions in the answer, and stipulations by the parties provide facts from which we can determine whether the facts are relevant and whether they show Schloss can pursue these claims. *Cf. Board of Trustees v. City of Ft. Wayne* (1978), 268 Ind. 415, 421–422, 375 N.E.2d 1112, 1116–1117 (Questions of standing ... depend upon factual issues. ... [A] a court must first determine that a party with standing has brought the cause and that he brings a justiciable issue before the court.)

The judicial doctrines of justiciability and standing exist to ensure litigation will be actively and vigorously contested, thus eliminating the possibility of collusion or attempts to obtain advisory opinions. *State ex rel. State Board of Tax Comm'rs. v. Marion Superior Court* (1979), 271 Ind. 374, 392 N.E.2d 1161, 1164 quoting *Indiana Education Employment Relations Board v. Benton Community Schools* (1977), 266 Ind. 491, 365 N.E.2d 752. Our Supreme Court says:

> The jurisdictional element of standing addresses the question of whether the complainant is the proper party to invoke the power of the court. It is a restraint on the exercise of a court's jurisdiction in that the court has no authority to proceed with the cause of action or decide any issues in the case unless there is a *demonstrable injury* to the complaining party. (Citation omitted).

(our emphasis) *State ex rel. State Board of Tax Commissioners v. Marion Superior Court* (1979), 271 Ind. 374, 392 N.E.2d 1161, 1164; and

> ... to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct *injury* as a result of the conduct at issue. However, Indiana cases recognize certain situations in which public rather than private rights are at issue and hold that the usual standards for establishing standing need not be met. This Court so held in *Zoercher v. Agler,* (1930) 202 Ind. 214, 172 N.E. 186, *reh. denied* 202 Ind. 214, 172 N.E. 907, and *Hamilton v. State ex rel. Bates,* (1852) 3 Ind. 452. This Court held in those cases that when a case involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter nor be a public official.

(our emphasis) *Higgins v. Hale* (1985), Ind., 476 N.E.2d 95, 101. *Cf.* 13 Wright, Miller, and Cooper, Federal Practice and Procedure, Jur.2d 3531 (1984).

The issue here is whether Schloss has alleged a demonstrable injury sufficient to seek the court's exercise of jurisdiction. The parties stipulated the franchise fee exacted by the City from the franchisee is passed to and paid by consumers of cable television services. (R. 32). They also stipulated the franchise fees collected by the City from 1982 to 1986 exceeded the City's expenditures and encumberances as documented by the City's budget. (R. 32). Thus, a determination of entitlement to injunctive relief or money damages depends upon whether IND. CODE 36–1–3–8(5) provides a basis upon which to predicate regulation of franchise fees.

Schloss argues Congress did not preempt franchise fee regulation when it enacted that part of the Cable Communications Act of 1984 codified as 47 U.S.C. § 542.[2] Schloss notes 47 U.S.C. § 556[3]

2. § 542. Franchise fees
  (a) Payment under terms of franchise

Subject to the limitation of subsection (b) of this section, any cable operator may be required

permits state and local regulation consist- ent with the Act and preempts only those

under the terms of any franchise to pay a franchise fee.

(b) Amount of fees per annum

For any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed 5 percent of such cable operator's gross revenues derived in such period from the operation of the cable system. For purposes of this section, the 12–month period shall be the 12–month period applicable under the franchise for accounting purposes. Nothing in this subsection shall prohibit a franchising authority and a cable operator from agreeing that franchise fees which lawfully could be collected for any such 12–month period shall be paid on a prepaid or deferred basis; except that the sum of the fees paid during the term of the franchise may not exceed the amount, including the time value of money, which would have lawfully been collected if such fees had been paid per annum.

(c) Increases passes through to subscribers

A cable operator may pass through to subscribers the amount of any increase in a franchise fee, unless the franchising authority demonstrates that the rate structure specified in the franchise reflects all costs of franchise fees and so notifies the cable operator in writing.

(d) Court actions; reflection of costs in rate structures

In any court action under subsection (c) of this section, the franchising authority shall demonstrate that the rate structure reflects all costs of the franchise fees.

(e) Decreases passed through to subscribers

Any cable operator shall pass through to subscribers the amount of any decrease in a franchise fee.

(f) Itemization of franchise fee in bill

A cable operator may designate that portion of a subscriber's bill attributable to the franchise fee as a separate item on the bill.

(g) "Franchise fee" defined

For the purposes of this section—

(1) the term "franchise fee" includes any tax, fee, or assessment of any kind imposed by a franchising authority or other governmental entity on a cable operator or cable subscriber, or both, solely because of their status as such;

(2) the term "franchise fee" does not include—

(A) any tax, fee, or assessment of general applicability (including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax, fee, or assessment which is unduly discriminatory against cable operators or cable subscribers);

(B) in the case of any franchise in effect on October 30, 1984, payments which are required by the franchise to be made by the cable operator during the term of such franchise for, or in support of the use of, public, educational, or governmental access facilities;

(C) in the case of any franchise granted after October 30, 1984, capital costs which are required by the franchise to be incurred by the cable operator for public, educational, or governmental access facilities;

(D) requirements or charges incidental to the awarding or enforcing of the franchise, including payments for bonds, security funds, letters of credit, insurance, indemnification, penalties, or liquidated damages; or

(E) any fee imposed under Title 17.

(h) Uncompensated services; taxes, fees and other assessments; limitation on fees

(1) Nothing in this chapter shall be construed to limit any authority of a franchising authority to impose a tax, fee, or other assessment of any kind on any person (other than a cable operator) with respect to cable service or other communications service provided by such person over a cable system for which charges are assessed to subscribers but not received by the cable operator.

(2) For any 12–month period, the fees paid by such person with respect to any such cable service or other communications service shall not exceed 5 percent of such person's gross revenues derived in such period from the provision of such service over the cable system.

(i) Regulatory authority of Federal agencies

Any Federal agency may not regulate the amount of the franchise fees paid by a cable operator, or regulate the use of funds derived from such fees, except as provided in this section.

**3.** § 556. Coordination of Federal, State, and local authority

(a) Regulation by States, political subdivisions, State and local agencies, and franchising authorities

Nothing in this subchapter shall be construed to affect any authority of any State, political subdivision, or agency thereof, or franchising authority, regarding matters of public health, safety, and welfare, to the extent consistent with the express provisions of this subchapter.

(b) State jurisdiction with regard to cable services

Nothing in this subchapter shall be construed to restrict a State from exercising jurisdiction with regard to cable services consistent with this subchapter.

(c) Preemption

Except as provided in section 557 of this title, any provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded.

(d) Definition of "State"

For purposes of this section, the term "State" has the meaning given such term in section 153(v) of this title.

state laws and regulations inconsistent with relevant provisions of the Act. Schloss argues IND. CODE 36–1–3–8(5) is totally consistent with 47 U.S.C. § 542.

The City concedes IND. CODE 36–1–3–8(5) and 47 U.S.C. § 542 can be interpreted to allow imposition of a lesser franchise fee than is permitted by 47 U.S.C. § 542. The City argues, however, such an interpretation would obstruct the purpose of the statutory scheme set out in 47 U.S.C. § 521(1), (2), (3), and (4).[4] The City opines Congress abandoned the notion franchise fees must be related to the cost of cable regulation. (Appellee's Brief, 8). The City opines 47 U.S.C. § 542(g)[5] makes clear the franchise fee is based solely upon the franchisee's status as such and need not be related to costs of regulating the franchise. The City argues state regulation would frustrate a national policy of permitting municipalities to contract fees up to 5%, 47 U.S.C. § 521(1); would frustrate a national policy of establishing procedures and standards responsive to the needs and interests of the local community, 47 U.S.C. § 521(2); would obstruct the policy of establishing a specific guideline for the exercise of federal, state, and local authority for regulation of cable systems, 47 U.S.C. § 521(3); and would upset the policy of providing the widest possible diversity of information sources and services available to the public, 47 U.S.C. § 521(4). The City concludes Congress intended, as national policy, to allow a local authority to charge any fee up to the 5% cap set by § 542(b).

In reply Schloss argues, in part, there is nothing in the Act's legislative history to indicate Congress intended to preclude local regulation of the franchise fee by tying it to the cost of regulation. He particularly refers to those parts of the legislative history stating Congress did not intend to upset the traditional relationship between state and local authorities. He opines Congress did not intend "to overturn an established policy of permitting franchise fees based upon regulatory costs[.]"

Recently we noted the factors considered when we attempt to determine if federal law and regulations preempt relevant state laws and regulations. We said:

> The Supremacy Clause, U.S. CONST. art. VI, cl. 2, nullifies state laws that interfere with or are contrary to federal law. ... Congress is authorized to absolutely preempt state and local rulemaking authority in a particular field. ... Even where Congress has not entirely displaced state and local rulemaking in a specific area, these lower laws are preempted to the extent that they conflict with federal law. Where a lower law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress ... it is preempted. Congressional, intent to preempt state law in a given subject area may be inferred from the existence of a comprehensive scheme of federal regulation. ... Preemption is also inferred when the area of law is one in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. ... State laws may be preempted by federal regulation as well as by federal statute. ... However, it will not be presumed that a federal statute or regulation was intended to super-

---

4. § 521. The purposes of this subchapter are to—

(1) establish a national policy concerning cable communications;

(2) establish franchise procedures and standard which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community;

(3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems;

(4) assure that cable communications provide and are encouraged to provide the widest possi-

ble diversity of information sources and services to the public;

(5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this subchapter; and

(6) promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems.

5. See footnote 2.

sede the exercise of state rulemaking authority unless there is a clear manifestation of intention to do so. ... Federal regulation of a field of commerce should not be deemed preemptive of state regulatory power unless the nature of the regulated subject matter permits no other conclusion or Congress has unmistakably so ordained.... (Citations and quotation marks omitted).

*Santini v. Consolidated Rail Corp.* (1987), Ind.App., 505 N.E.2d 832, 835–836.

We agree 47 U.S.C. § 556[6] shows an express Congressional intent not to occupy the complete field of cable television franchising. Instead, Congress specifically said it intended to preempt only those state and local laws and regulations "inconsistent" with the Act. 47 U.S.C. § 556(c).

Because the Act does not expressly preempt state regulation in toto and because, as the City concedes, IND. CODE 36–1–3–8(5) can be applied in a manner not inconsistent with the terms of 47 U.S.C. § 542(b), we are left to determine whether Congress intended to permit state regulation and whether IND. CODE 36–1–3–8(5) acts as an obstacle to accomplishment and execution of the full purpose and objectives of the Congress.

The United States Court of Appeals for the District of Columbia Circuit recently discussed the Cable Communications Policy Act of 1984 in the contexts of technical requirements for signal quality and a Federal Communications Commission policy of forbearance to review franchise fee disputes. In the face of an argument an FCC technical standards rule exceeded FCC preemption authority the court noted:

> Since Congress legislated against the backdrop of the Commission's preexisting preemption regulation without criticizing that regulation, we infer that Congress endorsed it, except where the Cable Act explicitly or implicitly modified its provisions.

*City of New York v. FCC* (D.C. Cir.1987) 814 F.2d 720, 725. The court then looked to statutory language, legislative history, and the state of regulation at the time of enactment to finally conclude

> When it passed the Cable Act, Congress focused on the FCC's existing policy—just approved by the Supreme Court in [*Cities Cable, Inc. v.*] *Crisp* [ (1984), 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580]—of preempting local cable technical standards, *see supra* at 724. But neither the Act's language nor any other piece of legislative history suggests Congress' intent to modify the FCC's past practice—at least with respect to Class I channels. *But see* dissent at 730–731.

First, we note Schloss's presumption of an "established policy" permitting regulation of franchise fees based upon the cost of regulation is wrong. Before enactment of the Cable Communications Policy Act of 1984, the Federal Communications Commission (FCC) exercised complete authority over the charging of franchise fees by rule at 47 CFR § 76.31, now deleted. *American Civil Liberties Union v. F.C.C.* (D.C. Cir.1987) 823 F.2d 1554, 1558; *Yakima Valley Cablevision, Inc. v. FCC* (D.C. Cir. 1986), 794 F.2d 737, 741–744. After enactment of the Cable Communications Policy Act of 1984, the FCC did not retain its rule limitation, because the Act established a limit on the amount of the franchise fee. *American Civil Liberties Union v. FCC* (D.C. Cir.1987), 823 F.2d 1554, 1562. The Act specifically prohibited any *federal* agency regulation of the amount of franchise fees. 47 U.S.C. § 542(i). Neither the Act nor the legislative history mention state or local regulation of franchise fees. To the extent the legislative history discusses collection of franchise fees at all it merely notes the Act establishes the authority of a city to collect a franchise fee of up to 5% of an operator's gross revenue. Senate Report No. 67, House Report No. 934, 98th Congress Second Session, reprinted in 1984 U.S. Code Congressional and Administrative News 4655, 4663.

Here, as the D.C. Circuit noted in *City of New York v. FCC,* 814 F.2d 720, 725, Congress legislated against a backdrop of the FCC's preexisting preemption, regulation.

---

**6.** See footnote 3.

Except where Congress explicitly or implicitly modified the regulation we infer Congress endorsed it. As the court noted in *Yakima Valley Cablevision, Inc.* (D.C. 1987) 794 F.2d 737, 740–742, the regulation in effect at the time of enactment, 47 C.F.R. § 76.31, limited the franchise fee to 3% of gross revenue unless the FCC allowed a fee of up to 5% upon certain showings. The Act set the permissible fee at 5%, 47 U.S.C. § 542(b), and prohibited any federal agency from regulation of any fee within that limit. 47 U.S.C. § 542(i). Neither explicitly nor implicitly does the Act permit the State to impose regulation of the amount of the franchise fee. Because only the FCC was regulating franchise fees when Congress enacted the Cable Communications Policy Act of 1984 we think it was not within the contemplation of Congress to vacate the field and permit state regulation of franchise fees.

Our conclusion is reinforced by the D.C. Circuit's exposition when discussing the FCC policy of forebearance in reviewing franchise fee disputes. That court noted:

> ... the franchise fee provision ... establishes a *uniform federal standard* for franchise fees, and ... the *ultimate* responsibility for ensuring a "national policy" with respect to franchise fees lies with the federal agency responsible for administering the Communications Act.... The [FCC] recognized ... one of the primary purposes of the Cable Act was to establish a "national policy" concerning cable communications, and that as part of this policy Congress chose to adopt a *federal standard* to govern the level of franchise fees.... [The FCC] ... implicitly acknowledged ... its responsibility to monitor judicial enforcement of the franchise fee provision and to assert its jurisdiction should inconsistent judicial interpretations threaten to undo the uniformity Congress sought to achieve in establishing a federal standard for franchise fees.

*American Civil Liberties Union v. FCC* (D.C.Cir.1987), 823 F.2d 1554, 1574. (Emphasis in original). We recognize the court there was discussing only the manner and forum for review of franchise fee disputes.

However, given the circumstances in which the Congress acted we find persuasive the D.C. Circuit Court's assertion Congress intended to adopt a *federal* standard to govern franchise fees. That purpose would plainly and obviously be frustrated by State regulation of these fees. It would "undo the uniformity Congress sought to achieve." We think IND.CODE 36–1–3–8(5) provides no basis upon which to predicate a claim the franchise fee is excessive. We think Congress intended to continue to occupy the field of franchise fee regulation when it enacted the Cable Communications Policy Act of 1984. Because Congress intended to occupy the field of franchise fee regulation and the stipulation of facts shows the fee was within the permissible limits set by 47 U.S.C. § 542, Schloss has alleged no demonstrable injury and the court had no jurisdiction to entertain this cause of action. Having reached this conclusion we need not discuss the other issues raised by Schloss.

AFFIRMED.

MILLER and HOFFMAN, JJ., concur.